## VESTRY OF ST. MARK'S ON THE HILL EPISCOPAL CHURCH ET AL. v. DOUB ET AL.

[No. 166, September Term, 1958.]

388

*Decided March 19, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Lawrence F. Rodowsky* and *Howard H. Conaway,* with whom were *Arnold Fleischmann* and *Frank, Bernstein, Gutberlet & Conaway* on the brief, for the appellants.

*George M. Berry,* with whom was *John F. Whitney* on the brief, for the appellee Ragan M. Doub.

*C. John Serio,* with whom was *Johnson Bowie, County Solicitor for Baltimore County,* on the brief for the appellees Baltimore County and Roland S. Piel.

KEATING, J., by special assignment, delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for

Baltimore County dismissing a bill of complaint, filed by certain residents and landowners of an area adjacent to Pikesville, which attacked the validity of a resolution of the County Commissioners of Baltimore County (hereinafter called the County Commissioners) passed on January 16, 1957, by which the County Commissioners adopted a new Zoning Use Map for the Third Election District of the County, embracing the Pikesville area. The resolution and map changed the classification of defendant Doub's property, along with other properties, from Residential (R-6) to Business Local (B-L). The appellants who own land and live nearby object.

The appellants assign three reasons for the invalidity of the resolution as it related to the property of the defendant Doub.

Appellants first complain that § 532 (c) of the Baltimore County Code of Public Local Laws (1955 ed.), which sets out the procedure to be followed in adopting a new use map incident to a comprehensive plan, was not adhered to in that the requirement of this statute, that the Zoning Commissioner make an initial study, make a preliminary report and hold a public hearing thereon before submitting his final report to the Commissioners, was not properly carried out and base their assertion on the following uncontroverted facts as disclosed by the record:

On June 25, 1956, the County Commissioners adopted a resolution (apparently not introduced into evidence) as to the advisability of changing some of the zoning district boundaries in the Third Election District and directing the Zoning Commissioner to make a preliminary report with respect to proposed amendments, supplements and changes of zoning districts and directing him to hold a public hearing thereon after public notice, and thereafter to submit to the County Commissioners his final report with respect thereto. He made such report and in it included some recommendations for changes, and accompanied the report with a map. In this preliminary report and first map the Doub property was shown as Residential-Apartment (rather than R-6 as previously). The Doub property was actually an unimproved lot. Notice of a public hearing before the Zoning Commis-

sioner on this preliminary report was given by publication in all County papers for two weeks prior to July 16, 1956, and it referred to the map which was on file and open for inspection. On July 16, 1956, the Zoning Commissioner held his hearing as advertised. It was attended by appellants or their representatives, but because they did not object to the change in classification of the Doub property from R-6 to R-A there was no discussion or mention of the Doub property during the hearing. Sometime later, and before the Zoning Commissioner prepared and submitted to the County Commissioners his final report and a map accompanying same, he changed the Doub property from R-A to Business Local—B-L. On December 12, 1956, the County Commissioners, after giving a proper notice by advertisement in all County papers, held a hearing on the final report and map as submitted by the Zoning Commissioner. None of the appellants or their representatives attended this hearing although they knew it was to be held. The County Commissioners used the Zoning Commissioner's final report and map as a basis for discussion at the hearing, and after further deliberation, on January 16, 1957, approved and authenticated an official zoning map of a portion of the Third Election District and the same day adopted the resolution approving the new zoning districts, etc. The new and authentic map and the resolution enlarged the particular B-L area in question to include not only the Doub property but some additional properties, including that of some of the appellants.

It will be seen from the above facts that the appellants concede, as well they must, the holding of a hearing by the Zoning Commissioner on his preliminary report on July 16, 1956. They contend, however, that because at that time no substantial change in classification of the subject property was proposed, the preliminary report and map were, as to that particular property, final and the Zoning Commissioner (and by inference the County Commissioners) had no right thereafter to make any changes in respect thereto except upon notice to those interested.

With this strained interpretation of the statute we cannot agree for the following reasons:

Rezoning by comprehensive plan is a legislative function and has been repeatedly so held. Such a function cannot be delegated except upon express authority. *Baltimore County v. Missouri Realty, Inc.,* 219 Md. 155. Yokely, *Zoning Law and Practice,* § 61. It seems clear that the intent of § 532 (c), *supra,* was to provide that the County Commissioners should have the help of the Zoning Commissioner in this respect only for the purpose of preliminary study and advice by recommendation. This view is strengthened by the fact that the statute requires the County Commissioners themselves to hold a hearing on the final report and to give notice. This presupposes the right of the Zoning Commissioner to make changes after his preliminary report and before his final report. Then too, if any proposal incorporated by the Zoning Commissioner in his reports could be enforced as an act of finality the very discretion which is lodged in the County Commissioners as the legislative body would be thereby nullified.

A careful reading of the statute in question—§§ 532 (b) and (c) will, we believe, reveal the employment of exact language to support the intention which we attribute to it. The significant words of authority are [§ (b)] that the County Commissioners shall have power to "divide or subdivide Baltimore County * * *" and [§ (c)] that they "shall *determine* the manner" in which the boundaries, districts, etc., shall be established; whereas the statute also provides that it shall be the duty of the Zoning Commissioner "to *recommend* the boundaries" etc.

While the precise function of these preliminary reports and hearings thereunder by the Zoning Commissioner has not heretofore been passed on by this Court, the appellate courts of some other states having very similar statutory provisions have given the matter consideration. The Supreme Court of Missouri in *State v. Davis* (Mo.), 259 S. W. 80, in discussing this very question under a statute, almost exactly like § 532 (c), *supra,* requiring a planning Commission (instead of the Zoning Commissioner) to make preliminary reports, hold hearings, etc., had this to say at page 82:

"To my mind these hearings are merely advisory to the Plan Commission, and the views obtained to be considered before the drafting of the final report. The Commission itself is but an advisory body to the legislative body of the city. * * * It is not until the lawmaking body puts the final report into the shape of an ordinance that the rights of the citizen are touched."

And in the case of *Whittemore v. Town Clerk of Falmouth* (Mass.), 12 N. E. 2d 187, a somewhat similar statute, requiring a planning board to hold hearings before making a final report and recommendations with respect to changing districts, or regulations, etc., was the subject of interpretations, albeit for reasons somewhat different from those concerned here. The Massachusetts Court indicated that the use of the word "recommendations" in the statute connotes advice based upon study and enlightenment elicited at the public hearing. It is significant that the word there emphasized is the one used in § 532 (c), *supra,* to indicate the duty of the Zoning Commissioner.

And now we come to the fallacy in the appellants' contention. The Zoning Commissioner could not, under the law, act otherwise than as a fact finder and adviser in respect to any property embraced within the comprehensive plan. The appellants are presumed to know the extent or limitations of his authority. They had no right to assume that the Zoning Commissioner would, or could, make no change in his original proposal with respect to any property or that the County Commissioners were in any way bound to adopt, in detail, the proposals or recommendations of the Zoning Commissioner. The fact that they neglected to follow the matter through its final hearing before the County Commissioners, though they admittedly had notice and the opportunity to do so, does not serve to invalidate the action.

We now consider the second objection: That the County Commissioners acted arbitrarily and capriciously in zoning the subject property B-L in the new comprehensive map because, although the Baltimore County Code, § 532 (a), re-

quires zoning regulations to be designed, in part, "to reduce congestion in the roads, streets and alleys," the evidence in the case showed, according to the view of the appellants, that the question of traffic congestion was not considered, or if considered at all, was disregarded, and that the facts disclosed that traffic congestion was more likely to increase than decrease as a result of the change. Again we disagree.

The provision respecting traffic congestion is only one of six general objectives of this statutory design. Some of these six general objectives have manifold purposes. Hence the statutory mandate is one of many facets the reconciling of which, in some instances, might be difficult, if not impossible. It is our view, therefore, that in exercising their legislative discretion on the comprehensive rezoning, the County Commissioners were required to consider the question of traffic congestion at or near the subject property, but only in its relation to all of the other objectives. Appellants rely heavily on certain statistical evidence in the court below which indicated a heavy volume of traffic on Reisterstown Road and on certain other evidence that commercialization usually increases the amount of traffic. However, there was evidence that the four lanes of Reisterstown Road had not nearly reached their volume capacity and that such traffic *hazards* as existed near the subject property resulted from poor traffic control or from violation of speed laws. There was no evidence that *congestion* at this location ever had been, or would likely be, a major problem, given proper traffic control. We hazard a guess that appellants have confused volume with congestion. They are neither synonymous or necessarily closely related. Congestion is often the result of a disorderly flow of a small volume.

Traffic problems of this nature which concern the enforcement of speed limits and the installation of traffic control devices are problems for the police department rather than the zoning authorities. *Bogert v. Washington Township* (N. J.), 135 A. 2d 1; *Twenty-One White Plains Corp. v. Village, etc.* (N. Y.), 180 N. Y. S. 2d 13; *Greenberg v. City of New Rochelle* (N. Y.), 129 N. Y. S. 2d 691.

Although this Court has not heretofore had occasion to

express itself explicitly on the meaning of "congestion in the streets," in *Hardesty v. Zoning Board,* 211 Md. 172, *Temmink v. Board of Zoning Appeals,* 212 Md. 6, and *Price v. Cohen,* 213 Md. 457, we held that rezoning from residential to commercial should not be granted because in each case the evidence showed that, due to already crowded streets and limited access, with no definite plan for improvement, congestion was bound to follow. Such is not the case here. And in *Marino v. City of Baltimore,* 215 Md. 206, upon which appellants rely, a special exception under the applicable statute was involved and we said that the element of traffic congestion was not necessarily controlling. That case turned upon the question of reasonable return from or reasonable use of the property, which there we held to be debatable.

The Supreme Court of Connecticut in *Pecora v. Zoning Commission, etc.* (Conn.), 144 A. 2d 48, had this to say about a statutory mandate similar to the one here involved:

> "It is not the over-all volume of daily traffic, but 'congestion in the streets,' that is, density of traffic, which is referred to in the statute. * * * *Furthermore, literally, under the claim of the plaintiffs as to traffic, a residence area could seldom, if ever, be changed to a business or industrial use, regardless of the recommendations in a comprehensive plan, since almost necessarily there would be a resultant increase in street traffic in the immediate area.* The *over-all* actions of the zoning commission must conform to the mandates of the statute. But these do not apply to *every detail* of the commission's actions. The construction claimed by the plaintiffs would render the statute unworkable. An intent to enact an unworkable statute is not to be imputed to the General Assembly unless the statutory language expressly requires it." (Emphasis supplied.)

In *Offutt v. Board of Zoning Appeals,* 204 Md. 551, the same objection was made. Curiously enough this also involved Reisterstown Road further north. Joseph D. Thompson, a

highway engineer, testified that the problem could be solved by traffic lights, and the court gave great weight to his testimony. The same witness testfied likewise in the instant case.

We therefore find that, on the evidence presented as to congestion, the resolution of January 16, 1957, was not arbitrary or capricious, and did not violate this statutory requirement. Cf. *Missouri Realty, Inc. v. Ramer,* 216 Md. 442.

We now come to appellants' third objection: That the resolution was arbitrary, capricious and unreasonable because the previous classification of subject property (R-6) is presumed to have been correct and any change therein must be based upon (1) a mistake in the previous plan or (2) a change in the character of the neighborhood. Appellants contend that the record shows no mistake and no change and that hence the presumption stands unrebutted. Appellees neither concede nor dispute the question of mistake but say that there was sufficient change in the neighborhood between the original 1945 classification and 1957 to justify the change in zoning.

Appellants contend that the presumption and the nature of evidence necessary to overcome it apply not only to change in classification of single properties but to rezoning according to a comprehensive plan. The above rule has been applied by this Court many times. *Offutt v. Board of Zoning Appeals, supra; Zinn v. Board of Zoning Appeals,* 207 Md. 355, and many others. In most of these cases the reclassification of a single property was involved and/or the case turned on other grounds.

Appellants rely on the case of *American Oil Co. v. Miller,* 204 Md. 32, as their authority for applicability to comprehensive zoning. A careful reading of that case will reveal that the resolution attacked actually applied to reclassifying a single property (although the proposal was later incorporated in a comprehensive plan) and this Court specifically said at page 38: "Of course, in passing upon the decision of the Commissioners, we will consider only the facts and circumstances existing at the time the resolution was passed on June 10, 1952." This was before the comprehensive plan was adopted. And while it is true that the Court in that case

did state the above rule as a basis for determining caprice, there was apparently no evidence at all of a change in character of neighborhood and the Court's entire inquiry was directed to a consideration of the four grounds mentioned in the resolution as a basis for its enactment and found none of them supported by the evidence. None of those grounds was a change in character.

However, assuming, without deciding, that the rule applies to comprehensive rezoning we find on the record considerable evidence of change in character of the neighborhood, certainly enough to overcome the presumption.

In deciding whether or not there was sufficient evidence to overcome the presumption we must necessarily consider the definition of the word "neighborhood." This Court has not heretofore defined the term as applied to zoning and it is an inexact and elastic designation of area at best. Nevertheless it seems to us that in rezoning a large area by new comprehensive plan the Commissioners may, and should, look somewhat further than the subject property or those immediately adjacent to it to determine reasonable needs and requirements and also to see what changes in character occurred.

Judge Henderson in *Zinn v. Board of Zoning Appeals, supra,* pointed out the desirability of comprehensive zoning rather than reclassification or special exception in accomplishing the fundamental aim of zoning. At page 359 he stated: "When it is argued that an unanticipated need has developed, this presupposes a fault in the original plan, that should be ideally corrected by a resurvey of the land use map, rather than by piecemeal alteration." From the record in this case we find that a real estate agent familiar with the whole Pikesville area for many years testified in detail as to the nature and present usage of many properties in the vicinity of the subject property, both across the Reisterstown Road and on the same side. From his description it appears that there has been a great deal of commercial development in the area. He also testified that a lot very close to the subject property had changed hands as late as 1954 and been improved by a filling station. A picture thereof filed as evidence shows both properties to be within a "stone's throw" of each other. He fur-

ther testified that "there has been just as good a change in the Pikesville area to my knowledge as there has been in every area in Baltimore County." Evidence shows the subject property to be on the very edge of Pikesville.

Appellants apparently take a narrow view. They consider the *immediate* neighborhood, which they apparently claim consists of the subject property, their own and those immediately adjacent and on the same side of Reisterstown Road to control, and that the measurement of time should not reach back further than the last action of the Zoning Commissioner and Zoning Appeal Board in November, 1955, denying a single application for reclassification and special use permit for the subject property. The short answer to that is that the findings of fact or conclusions of the Zoning Appeal Board are not binding upon the County Commissioners. They are here concerned with a comprehensive plan, one object of which was to provide substantial additional commercial property for a rapidly growing suburban community, and their inquiry into time and space with respect to change might very properly be more extensive than that of the Appeal Board on a single application. The evidence showed that, in addition to changing the subject property and that of the other appellants, an area of about 25 acres some distance up the Reisterstown Road beyond the subject property was likewise changed to commercial by the map. While several of the appellants' witnesses expressed opinions that there had been no change in the neighborhood they did not specify what they considered to be the neighborhood nor upon what facts they based their opinions. As against such opinions the record showed substantial facts to the contrary. We, therefore, conclude that the matter was a fairly debatable one and the presumption is overcome and that therefore the County Commissioners' actions were not arbitrary, capricious or unreasonable.

For all of the reasons set forth above we find that the decree of the chancellor should be affirmed.

*Decree affirmed, with costs to be paid by the appellants.*