CAROLE HIGHLANDS CITIZENS ASSOCIATION,
INC., ET AL. *v.* BOARD OF COUNTY COMMIS-
SIONERS OF PRINCE GEORGE'S
COUNTY ET AL.

(Two Appeals In One Record)

[No. 155, September Term, 1959.]

*Decided March 16, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*C. Edward Nicholson,* with whom was *William L. Kahler* on the brief, for the appellants.

*Robert B. Mathias,* with whom was *Harry L. Durity* and *James Magruder Rea* on the brief, for appellee Board of County Commissioners of Prince George's County.

*Joseph A. DePaul,* with whom were *Blair H. Smith, Charles T. Finley,* and *Keane & DePaul* on the brief, for appellee William Cohen.

Henderson, J., delivered the opinion of the Court.

This appeal in a zoning case is from the order of the trial court dismissing two petitions for review filed May 15, 1959, challenging resolutions of the County Commissioners of Prince George's County, sitting as a District Council for that part of the Maryland-Washington Regional District within Prince George's County. The actions taken involved the reclassification of a large lot owned by William Cohen, by dividing it in two and changing the front portion from R-55 (one-family, detached residential) to C-2 (general commercial), and the back portion from R-55 (one-family, detached residential) to R-18 (multiple family, low density), respectively. In the court below the reclassifications were challenged on the grounds that they constituted "spot zoning", and were arbitrary and capricious because of a lack of proof of original error or change of condition, but the only contention pressed on appeal is that the reclassifications were conditional and in violation of the uniformity provisions of the zoning laws and ordinance.

At the argument it was suggested by counsel for the appellees that the County Commissioners derived their zoning powers from section 1124 of the Code of Public Local Laws of Prince George's County (1953 Ed.), which, by reference, adopts those powers conferred by Art. 66B of the general law. It would seem, however, that this section, and other pertinent

sections of the local Code, were expressly repealed by Chapter 780, Acts of 1959, effective April 28, 1959, when new sections dealing with the powers and duties of the Maryland-Washington Regional District were adopted in a recodification. We think the applicable sections are now sections 75, 76, 79, 85, 86 of Chapter 780. Generally, it may be said that the zoning powers in this District are derived from the local law, but supplemented by the general law, Art. 66B, where there is no inconsistency. Under sec. 76, *supra,* the local law requires that all regulations (including use regulations) "shall be uniform for each class or kind of building throughout any district or zone * * *." The language is virtually identical with that contained in Code (1957), Art. 66B, sec. 2. Sec. 79 (d) of the local law defines "amendment" to include any change in the zoning map, and "regulation" to include any "restrictions * * * limitations * * * and prohibitions."

In Resolution No. 67, under attack, the County Commissioners, in reclassifying the westerly portion of lot 7, containing some 4.83 acres fronting on New Hampshire Avenue, from R-55 to C-2, made the newly-permitted commercial use "Subject to * * * the specific agreement made with Mr. Blair Smith, attorney for the petitioners, relative to the location and operating time of the swimming pool and the prohibition against the erection of a gasoline station on the premises zoned C-2." It is conceded that under the Zoning Ordinance for that part of the Maryland-Washington Regional District within Prince George's County, sec. 21.1 provides that an automobile filling station is permitted without special exception in a C-2 zone.

In Resolution No. 68, the Commissioners in reclassifying the easterly portion of lot 7, containing some 4.45 acres from R-55 to R-18, did not specifically impose any conditions or restrictions, but it seems clear from the record that the action taken was dependent upon the action in No. 67. In his testimony Mr. Smith, counsel for the owner of lot 7, stated that his client wanted to "put up this motel * * * [and not] anything but this motel, so I offer this contract to the Board of County Commissioners." He then read a form of contract reciting that William Cohen desired to erect a modern luxury

motel and apartments and agreed to construct "in addition to the Motel units, a first-class restaurant, three community rooms to be used for civic and social purposes, a regulation swimming pool capable of being converted into a facility for ice skating during the winter months and that said facilities will be shared with residents of the community on a membership basis." There followed agreements as to the type of apartments that would be constructed on the rear portion of the lot, the time within which work would be commenced, a covenant not to erect any other structures or use the property for any other purpose in the meantime, and a consent to a mandatory injunction against other use.

It does not appear that this contract was ever executed, but it is obvious that the reclassification in Resolution No. 68 followed, as a part of the same proposal, the reclassification in No. 67. There was other testimony, for example, that "the best buffer between commercial and residential are apartment houses", and that "apartment zoning to the rear of the proposed commercial would act as an ideal [buffer] between commercial and existing residential that does exist back here." In short, the only justification offered for the rezoning of the rear portion of the lot from R-55 to R-18, was based on the assumption that the front portion would be rezoned commercial. We cannot find on this record that the Commissioners would have acted favorably upon the one without the other. Nor can we find that the Commissioners would have granted the change to commercial except upon the conditions noted in Resolution No. 67.

The appellant relies strongly upon our recent decision in *Baylis v. City of Baltimore*, 219 Md. 164. The appellees seek to distinguish that case on the ground that there was a binding contract in that case, limiting the use to that of a funeral home, and imposing certain other restrictions. We think the distinction is unsound. We said in the *Baylis* case (p. 169): "If it [the council] were permitted in special cases to allow inconsistent uses in such districts, it would destroy the uniformity required by Sec. 2 of the Enabling Act." We quoted from *Wakefield v. Kraft*, 202 Md. 136, 149, a statement that the County Commissioners, in that case, "are not a Planning

Board, nor have they a right to exact conditions, or promises of a particular use in return for deciding that the public interest justifies that an area should be zoned commercial. * * *." [1] We also pointed out (p. 170) the basic difference between rezoning, which has the effect of distorting the basic plan, and variances and special exceptions, which are consistent therewith and self-limiting. In the still more recent case of *Rose v. Paape,* 221 Md. 369, 157 A. 2d 618, we held that conditions, attached by the County Commissioners of Anne Arundel County, invalidated a reclassification, although they were not in the form of a written contract.

The appellees attempt to support the reclassifications in the instant case as falling in the category of special exceptions. It is difficult to read the provisions of the ordinance, sections 27 and 28, as permitting the Council to alter the regulations so as to deny the use of property for a filling station at one location in a C-2 zone, and not at another. The short answer to this contention would seem to be that the proceeding was not based on an application for special exception, but was for a rezoning. A granting of the application would, under the general and uniform plan, permit, unconditionally, any of the uses specified for C-2. The case of *Huff v. Board of Zoning Appeals,* 214 Md. 48, 59, does not support the appellees' contention here. The Zoning Regulations themselves, in that case, set up a special classification of M. R. (manufacturing, restricted), which was held to be analogous to a special exception, so as to make inapplicable the tests that control the propriety of rezoning. Moreover, the conditions there attached were found to be fairly within the scope of the delegated power, and consistent with the general plan. In the instant case the action taken was, in effect, the creation of a novel

---

1. Counsel have pointed out that one of the numerous cases cited in the *Baylis* case, *Church v. Town of Islip,* 160 N. Y. S. 2d 45 was subsequently reversed by a divided court in the Appellate Division (190 N. Y. S. 2d 927). The case has now been appealed to the New York Court of Appeals, 194 N. Y. S. 2d 518, but has apparently not yet been decided.

classification not authorized by the general plan for zonal use. We think the *Baylis* and *Rose* cases, *supra,* are controlling.

> *Order reversed with costs, and case remanded for the entry of an order reversing the action of the County Commissioners in each case.*