BONHAGE ET AL. *v.* CRUSE ET AL.

[No. 15, September Term, 1963.]

*Decided November 12, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Gordon C. Murray* for appellants.

No brief and no appearance for appellees.

BRUNE, C. J., delivered the opinion of the Court.

Owners of residential properties fronting on both sides of a rather short dead end road, La Paix Lane, which runs west from a main north-south highway, the York Road, appeal from

an order of the Circuit Court for Baltimore County which affirmed an order of the County Board of Appeals granting a special exception permitting the use as a convalescent home of a one-acre square tract, zoned as residential, at the southwest corner of these two streets. The Zoning Commissioner denied the application for a special exception, the County Board of Appeals, by a 2-1 vote, granted it, and the Circuit Court affirmed the order of the Board, holding that there was evidence before the Board upon which it could reach its conclusion and hence that its action had to be sustained.

The subject property, which has been improved by an old residence, the protestants' properties and most of the properties in the immediate vicinity of the subject property on both sides of the York Road are zoned as residential, and to a large extent residential use continues, though there is some commercialization, especially at an intersection about 425 feet south on the York Road, where there are several filling stations. Immediately across La Paix Lane north of the subject property is a rather large parking lot belonging to a church which is located diagonally across the York Road and to the northeast of the intersection. Further to the north, on the west side of the York Road, beyond those houses and a part of the property of the Sheppard and Pratt Hospital, are two office buildings, one of which contains a cafeteria and drug store. There are also some permitted uses on residentially zoned properties in the neighborhood which are not strictly residential, such as doctors' offices. The same general area here involved was also involved in the case of *Whittle v. Board of Zoning Appeals*, 211 Md. 36, 125 A. 2d 41, and we shall not go into any full description of it here. A large new medical center is now in course of construction not far away and it appears that this development increases the desirability of property in this area for use as a convalescent home.

The York Road is a very heavily traveled highway. La Paix Lane is a little backwater much in keeping with the peaceful atmosphere that its name implies. It is paved only to a width of fifteen feet, and is entered between two brick gateposts on the south and north sides, respectively, and is bordered on each side by a row of trees. The testimony indicates that a fifteen-

foot paved road would be inadequate for traffic to and from a convalescent home on the subject property and that an entrance and exit for vehicular traffic on the York Road side would be impractical. It is, therefore, proposed that ingress and egress be on the La Paix Lane side, just as the old residence on this property has been reached by a road entering La Paix Lane and not from the York Road. The testimony also indicated, though the Board's order did not so specify, that to accommodate traffic to and from the convalescent home, the paved portion of La Paix Lane should be widened to thirty feet approximately to the depth of the subject property. This, it appears, would require removal of the gate posts and of the rows of trees along the widened part of the street.

The Baltimore County Zoning Regulations permit a convalescent home in a residential area, if a special exception therefor is granted. It is also clear that special exceptions are not to be granted as a matter of course, but that all the items listed as possible special exceptions, though proper uses of land, "have certain aspects which call for special consideration of each proposal." Section 502.1 provides in part that "[b]efore any Special Exception shall be granted it must appear that the use for which the Special Exception is requested will not" produce any of six results, only two of which call for consideration here. The first (a) is that the use shall not be "detrimental to the health, safety or general welfare of the locality involved;" and the second (b) is that it shall not "[t]end to create congestion in roads, streets or alleys therein."

Section 502.2 of the Regulations directs that the Zoning Commissioner or the Board, in granting any special exception, "shall impose such conditions, restrictions, or regulations as may be deemed necessary or advisable for the protection of surrounding and neighboring properties." The Board did impose restrictions and conditions dealing with the preservation of a green space along the westernmost twenty-foot strip of the subject property and the maintenance and replacement of trees and shrubbery, and requiring that the home be completely air conditioned to prevent noises from emanating therefrom, and that "[a]ll site plans for the subject property, including plans for

14

egress and ingress from said property, must be approved by the office of Planning and Zoning."

There was testimony before the Board given by Mr. Frederick P. Klaus, a real estate expert, that "we felt that to apply for a special exception for a nursing home in this location would in no way depreciate or deteriorate the general surrounding neighborhood, due to its location." Mr. Klaus testified as an expert adviser to a Mr. Chew, who at the time of the hearing was the contract purchaser of the subject property, which was then owned by the Cruses. (Not more than about a month after the decision of the Board, Mr. Klaus had apparently taken over Mr. Chew's rights as purchaser, and he intervened in the proceedings in the Circuit Court.) There was strong testimony before the Board, contrary to that of Mr. Klaus, to the effect that the use of this property for a convalescent home would depreciate the value of the neighboring property.

We may assume that Mr. Klaus' testimony was sufficient to warrant the majority of the Board in finding that the granting of the special exception for a convalescent home would not be detrimental to the health, safety or general welfare of the locality involved, at least with the conditions above referred to as to the preservation of trees and shrubbery and the installation of complete air conditioning to prevent the emanation of noise, and that the action of the Board on this phase of the matter should therefore be affirmed. See *Amberley Assn. v. Board of Appeals of Anne Arundel County,* 229 Md. 261, 268, 182 A. 2d 811. (For cases presenting converse situations in which Board action denying a special exception or permit was upheld, see *Crowther, Inc. v. Johnson,* 225 Md. 379, 170 A. 2d 768; *Dorsey Enterprises v. Shpak,* 219 Md. 16, 147 A. 2d 853.)

The majority of the Board did not discuss the traffic problem in its opinion, apparently considering that the evidence was insufficient to call for any such discussion. We note that plans for the proposed convalescent home when the matter was before the Board were exceedingly indefinite. Even the number of beds to be available in the home might have been anywhere between fifty and eighty or possibly a hundred. The uncertainty as to the number of people to be accommodated in the home,

of course, tended to render uncertain the number of persons who might be required to staff it, and all of these uncertainties created further uncertainties as to the number of vehicles, both passenger cars and delivery trucks, which might have occasion to enter and leave the premises and hence raised doubts as to traffic congestion. The testimony of the engineer called by the applicants is in some respects not very illuminating and it is based to a considerable extent upon anticipated new roads still in a rather indefinite stage of planning and development. He did, however, express the view that no serious traffic problem would be created if La Paix Lane were widened and were used for vehicular traffic to and from the home, and a representative of the the Office of Planning of Baltimore County was fairly strong in his opinion that no serious traffic congestion would be created by reason of the establishment of a convalescent home of any of the various capacities suggested. We suppose that the condition imposed by the Board requiring approval of the site plan and of ingress and egress routes by the Office of Planning and Zoning was designed at least in part to protect against the likelihood of traffic congestion. There would doubtless be some increase in traffic from the establishment of the proposed convalescent home, but this would not necessarily result in creating traffic congestion; we think that the Board could properly have reached the conclusion that if La Paix Lane were to be widened actual congestion would not be created. See *Vestry of St. Mark's, etc. Church v. Doub,* 219 Md. 387, 394-95, 149 A. 2d 779 (a case involving comprehensive rezoning in which a comparable standard was applicable), and cases therein cited. However, we think that the Board could properly reach such a conclusion in the instant case, if, but only if, there were assurance that La Paix Lane would be widened sufficiently to accommodate the increased traffic to which that narrow road would be subjected; and we find no such assurance.

The County Board of Appeals, so far as we are informed, has no power to widen streets or to require them to be widened; nor, so far as we are informed, does the Office of Planning and Zoning. It seems to us clear from the applicants' own evidence before the Board that La Paix Lane as now constructed would be inadequate. Its widening is not a condition which the Board

16

attached to its approval (perhaps because of doubt as to its power to attach it—perhaps because it did not deem it necessary) ; but without such widening, we think that on the applicants' own showing, condition b of Section 502.1—that the granting of the special exception would not tend to create traffic congestion—has not been met. Such being the case, we think that the granting of the special exception in this case was unwarranted.

We express no opinion with regard to the Board's right to attach a condition which it might not be able to enforce, but which the applicants might be able and willing to comply with. Nor do we find it necessary at this time to go into the appellants' contention that the proposed convalescent home would in fact be a hospital and that as such it would violate the density requirements of the Regulations.

In accordance with the view above expressed, that the requirement of subdivision b of Section 502.1 of the Zoning Regulations of Baltimore County has not been met, we shall reverse the order appealed from and remand the case to the Circuit Court with instructions to enter an order reversing the order of the Board of Zoning Appeals and reinstating the order of the Zoning Commissioner, which denied the special exception.

*Order reversed and case remanded for the entry of an order in accordance with this opinion; the costs to be paid by the appellees.*