ROHDE, ET AL. *v.* COUNTY BOARD OF APPEALS FOR BALTIMORE COUNTY AND ORTEL REALTY, INC.

[No. 198, September Term, 1963.]

*Decided April 3, 1964.*

262

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Ernest C. Trimble* for appellants.

*Harris James George* and *William S. Baldwin* for Ortel Realty, Inc., part of appellees.

No brief and no appearance for County Board of Appeals for Baltimore County, other appellee.

BRUNE, C. J., delivered the opinion of the Court.

Neighboring property owners appeal from an order of the Circuit Court for Baltimore County affirming the action of the County Board of Appeals (the Board) in reclassifying a tract of approximately 37 acres of undeveloped land from R-6 (residence, one or two family) to R-A (residence, apartment) and in granting a special exception permitting two high rise, or elevator, apartment buildings. One of the appellees is the Board; the other is the applicant for the rezoning and special exception, Ortel Realty, Inc. (Ortel). The Zoning Commissioner denied both applications; the Board, by a 2-1 vote, granted both, with conditions attached to the special exception.

The property in question is very near the intersection of two major roads a little north of the Baltimore City line. These roads are Loch Raven Boulevard, running north and south, and Taylor Avenue, running east and west. This tract is near that involved in *Renz v. Bonfield Holding Co.*, 223 Md. 34, 158 A. 2d 611, but lies on the other side of Loch Raven Boulevard and a little to the north of the Bonfield property. The intersection is heavily commercialized on all four corners, the total area so used being about 70 acres. The Ortel tract consists of slightly less than 37 acres, is wholly undeveloped, and lies to the south

of Taylor Avenue and west of Loch Raven Boulevard. It does not actually abut the commercial property at the southwest corner of the intersection, and is presently surrounded by property zoned R-6, R-10 or R-20, each of the last two being a one family, residential classification. To the west of the Ortel land lies a part of the golf course of the Maryland Country Club. There are several residential developments in the immediate vicinity, and present access to the Ortel tract is through the Glendale-Glenmont developments. The present zoning was effected in 1955, when a comprehensive map for the 9th District was adopted.

There is a proposal, which has been pending for some time, to extend a substantial highway known as Goucher Boulevard so as to run southeast from Taylor Avenue and connect with Loch Raven Boulevard. As planned, it would pass close to the northeast side of the Ortel land, but would not actually touch that tract. A small strip of land, now zoned R-6 would be left between, but would be useless for development purposes. The testimony indicates that the full, proposed apartment use, involving 832 dwelling units, would generate considerable additional traffic for which existing roads would probably not be adequate. The present R-6 zoning would permit 204 residence units, reclassification to R-A would allow 592 units, and the special exception would add 240 more. The opinion of the majority of the Board states that the special exception is granted subject to three conditions: (1) that "[n]o construction work on the property shall begin until the completion of the extension of Goucher Boulevard from Taylor Avenue * * * to * * * Loch Raven Boulevard * * *;" (2) approval of all site plans by the County Office of Planning and Zoning; and (3) "[e]gress and ingress from the subject property must be approved by the proper State and County authorities." The order implementing the opinion refers to the opinion and states that the "reclassification and special exception petitioned for, be and the same is [sic] hereby granted subject to the aforementioned restrictions." Despite some possible ambiguity in the order, it is not directly attacked as being conditioned with regard to the reclassification from one zone to another upon Goucher Boulevard being extended or upon either of the other conditions.

Among the grounds of attack are, however, uncertainty as to whether Goucher Boulevard will be extended and as to whether, even if it is, the Ortel tract will have access to it; and the appellants urge strongly that there is no showing that without the extension of Goucher Boulevard and without direct access to it, serious traffic difficulties and hazards will not develop from R-A development of 592 new units, even without the additional 240 to be contained in the high rise apartments to be built under the special exception.

There was testimony that the State Roads Commission was willing to build the proposed extension of Goucher Boulevard, if duly requested by the County to do so, and that the County would make such a formal request in writing. Though there was some question as to just how soon the Commission could or would act, we think that the evidence was sufficient to show that this extension was "reasonably probable of fruition in the foreseeable future." The Board was, accordingly entitled to consider it in determining the proper classification of the subject property. *Trustees of McDonogh Educational Fund and Institute v. Baltimore County,* 221 Md. 550, 570-71, 158 A. 2d 637.

It is obvious to us, and it must have been equally obvious to the Board, that the extension of Goucher Boulevard would do nothing to alleviate any traffic problems growing out of the use of the Ortel tract for apartments, unless some means of ingress and egress between that tract and the extended highway were provided. We infer that it was in the expectation that when the extension should be made such access would be provided, that the Board granted the reclassification. We cannot say on the record before us, where the protestants show only uncertainty as to this matter, that the Board was unreasonable or arbitrary in holding such a view; and we think that it might take this prospect into consideration in deciding the question of reclassification. Also, although R-A development of the tract, even without the special exception would undoubtedly produce a greater volume of traffic than would R-6 development, we do not think that the evidence establishes that traffic congestion would necessarily result from R-A reclassification alone; *Vestry of St. Mark's Church v. Doub,* 219 Md. 387, 395, 149 A. 2d 779; *Southland Hills Improvement Assn. v. Raine,* 220

Md. 213, 218, 151 A. 2d 734; *Bonhage v. Cruse,* 233 Md. 10, 15, 194 A. 2d 803. See also *Missouri Realty Inc. v. Ramer,* 216 Md. 442, 450-51, 140 A. 2d 655, which emphasizes the importance of the finding of the Board with regard to traffic congestion, where there is evidence to support its conclusion.

The problem with regard to the special exception and traffic congestion is somewhat different. As to this, under Sec. 502.1 b of the Baltimore County Zoning Regulations, it must appear that traffic congestion will not result from the granting of the special exception. The testimony, particularly that of Mr. Gavrelis, the Deputy Director of Planning for the County, makes it clear, we think, that the extension of Goucher Boulevard and direct ingress and egress between it and the Ortel property were considered necessary to produce a satisfactory situation from a traffic point of view. The site plan submitted by the applicant contemplates such access, and the Board evidently deemed it necessary when it inserted conditions requiring that the extension of Goucher Boulevard should be made before construction should begin, that site plans be approved by the Office of Planning and Zoning, and that egress and ingress be approved by proper State and County authorities. These conditions seem to smack strongly of reclassification upon conditions, not merely of the granting of a special exception upon conditions; but as we have pointed out, that is not a ground of attack. (See *Baylis v. Baltimore,* 219 Md. 164, 148 A. 2d 429; *Rose v. Paape,* 221 Md. 369, 157 A. 2d 618; *Carole Highlands Citizens Ass'n. v. Board, etc., Prince George's County,* 222 Md. 44, 158 A. 2d 663, in which conditional zoning was held invalid.) The conditions are clearly applicable to the special exception. Though they do not expressly require that the Ortel tract have access to the extension of Goucher Boulevard, we think that the evidence would permit the Board to find that the requirements of Sec. 502.1 b were met.

In reaching this conclusion, we have not overlooked *Bonhage v. Cruse, supra,* which involved the same provision of the Baltimore County Zoning Regulations. There, we found that there was no assurance that a sidestreet which led into a development behind the subject property would be widened, and that unless this street were widened it could not be shown that con-

gestion would not result. Consequently Sec. 502.1 b was not satisfied. The situation here presented is different in that the extention of Goucher Boulevard is required as a condition precedent to construction and access to that new road is implicitly required, so that we think the Board could find that with the new road built and with access to it provided, it appeared that traffic congestion would not result from the grant of the exception.

The appellants urge that other requirements (subdivisions a, c, d, e and f) of Sec. 502.1 have not been met because it has not been affirmatively shown that the granting of the special exception would not: (a) be detrimental to the health, safety or general welfare of the locality; (c) create a hazard from fire, panic or other dangers; (d) tend to overcrowd land and cause an undue concentration of population; (e) interfere with adequate provisions for schools, parks, water, sewerage, transportation, etc.; or (f) interfere with adequate light and air. There was general testimony from experts that none of these things would happen. It is often difficult to be specific in proof of a negative. There was, however, testimony that the proposed apartments would serve as a desirable buffer between the commercial zone and the existing residential developments. There was also testimony to the effect that apartment dwellers were not likely to have so many children of school age as persons living in their own houses of the R-6 type, so that the change in classification would not provide an increase in school population proportionate to the number of residence units, and there was evidence as to the adequacy of sewerage facilities. So far as interference with light and air is concerned, this seems to be mainly a matter of interference by the high rise apartments with a distant view now enjoyed by some of the neighbors, which we think is not within the scope of subdivision f. We think that the Board had evidence before it from which it could find that these other requirements of Sec. 502.1 were met.

The appellants also charge that the rezoning is bad as spot zoning and that there was no sufficient evidence of mistake in original zoning or of change in conditions as to warrant reclassification. They also lay stress on the fact, which is conceded, that the property can be used under its R-6 classification. That

alone is not, however, an absolute bar to reclassification. Zoning is not static. *Missouri Realty, Inc. v. Ramer, supra,* 216 Md. at 447. It is, nevertheless, necessary to show error in original zoning or in its equivalent, comprehensive rezoning, or a subsequent change in conditions, although the change in classification be from one residential use to another (*Reese v. Mandel,* 224 Md. 121, 167 A. 2d 111; *Levy v. Seven Slade, Inc.,* 234 Md. 145, 198 A. 2d 267), unless the Legislature has indicated that the new classification and the classification of neighboring property are compatible. See *Huff v. Board of Zoning Appeals,* 214 Md. 48, 57, 133 A. 2d 83, where such a new classification was analogized to a special exception, and *Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824, where a new classification of a residential nature was superimposed upon existing residential classifications and *Huff* was followed; and see the comment on these cases in *Overton v. Board of County Commr's of Prince George's County,* 223 Md. 141, 150, 162 A. 2d 457.

In approaching these other questions, which are here so closely related that we shall treat them together, we must bear in mind the limited scope of our review, which has been frequently stated and restated. Suffice it to say that the court is not to substitute its judgment for that of the Board; and if there was evidence upon which it could fairly reach its conclusions of fact, they are not to be disturbed. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 562, 105 A. 2d 219; *White v. Board of Appeals,* 219 Md. 136, 148 A. 2d 420.

The County adopted a comprehensive zoning map in 1955 covering the 9th District in which the Ortel tract lies. This was a comprehensive rezoning which is entitled to the same presumption of correctness as an original comprehensive zoning. To warrant piecemeal rezoning, there must be a showing of error in the comprehensive rezoning when made or a subsequent change of conditions, or both. It is sometimes difficult to say whether some evidence shows original error or a change in conditions, and it may not be necessary to resolve the question. *Pressman v. City of Baltimore,* 222 Md. 330, 160 A. 2d 379. That, we think, is the situation here. The applicant produced considerable expert testimony to show that either as a result of

lack of anticipation of trends of development in 1955 or as a result of changes in trend which have occurred since then, whether anticipated or not, the existing zoning was in error at the time of the hearing. The trend has been towards apartments and, particularly in areas close to the City of Baltimore, towards high rise apartments. The need and demand for such rental accommodations have increased greatly over the last several years, and the subject property is described as a prime site for apartment development, including high rise apartments. The testimony here is far more explicit and far more localized as to the need for such development than it was in *Shadynook Improvement Ass'n v. Molloy*, 232 Md. 265, 192 A. 2d 502. There was, as already noted, evidence to the effect that this apartment development would serve as a buffer zone to prevent the spread and encroachment of the highly commercialized area at the Taylor Avenue-Loch Raven Boulevard intersection into the residential areas where the protestants have their homes. It was also shown that the sewerage facilities in this area had been materially increased since the 1955 rezoning.

On the above evidence we cannot say that the action of the Board was arbitrary or unreasonable, or that it involved spot zoning of the invidious type. *Huff v. Board of Zoning Appeals, supra*. The matter was at least within the realm of the fairly debatable, and the action of the Board must, therefore, be upheld. *White v. Board of Appeals; Missouri Realty Inc. v. Ramer*, both cited above. The situation here presented is the reverse of that in the *Renz* and *Reese* cases in that here the Board has approved the reclassification, but there it disapproved reclassification. In each case its action was fairly debatable and was therefore upheld. The distinction between the present case and *Shadynook* turns upon whether there was or was not enough to bring the question of mistake or change within the realm of the fairly debatable. In *Shadynook* no one of the five grounds urged as showing mistake nor all of them together were sufficient to raise the issue to the level of the fairly debatable.

> *Judgment affirmed, the appellants to pay the costs.*