HOWARD COUNTY, MARYLAND ET AL. v. WILLIAM P.
DORSEY

[No. 1141, September Term, 1979.]

*Decided June 12, 1980.*

The cause was argued before THOMPSON, LOWE and
MACDANIEL, JJ.

*Carol B. O'Keeffe, Assistant County Solicitor for Howard
County,* with whom was *Timothy E. Welsh, County Solicitor
for Howard County,* on the brief, for appellants.

*Bernard F. Goldberg* for appellee.

MacDANIEL, J., delivered the opinion of the Court.

Appellee William P. Dorsey is the owner of a parcel of land, 4.76 acres more or less, in the Sixth Election District of Howard County, Maryland. In March 1978, he filed a petition to the Howard County Zoning Board requesting a change of zoning for his property, from R-12 (Residential, 12,000 square feet minimum lot size) to M-1 (light manufacture). The requested change was opposed by the Howard County Office of Planning and Zoning, the Planning Board of Howard County and several neighboring residents. Hearing on the petition was held and testimony presented on August 7, 1978. The Zoning Board rendered its decision denying the petition on September 8, 1978. On October 2, 1978, an appeal was taken to the Circuit Court for Howard County (Guy J. Cicone, J., presiding) in accordance with provisions of the Howard County Code. The circuit court heard arguments on April 24, 1979, and, in a Decision and Order dated September 17, 1979, reversed the Zoning Board's decision. The circuit court ruled that the decision to zone the property R-12 was in error, and that the Zoning Board's denial of proper zoning (M-1) was arbitrary and without proper foundation. The court ordered that the present zoning of the property be M-1, and remanded the case to the Zoning Board for proceedings consistent with its decision.

Howard County has filed this appeal alleging error in the circuit court's reversal of the Zoning Board's decision. We shall affirm the decision of the circuit court.

The 4.76 acre tract of smooth, somewhat graded, mostly undeveloped land lies nearby the Town of Guilford (see Appendix). Looking to the north and then clockwise, it is bordered by Berger Road, Oakland Mills Road, a plant/warehouse and a set of railroad tracks which runs through the northern part of Guilford, and some other warehouses. One dwelling sits on the property, in the northeastern corner; it is rented out. Five other houses sit nearby: one across from the property on the northern side of Berger Road, and four in a line due west from the property

on the south side of that road. One of these four houses serves as the offices of a contracting company, and not as a residence. Berger Road, which provides access to all of these houses, is a dead end. The road was cut in half as part of the redevelopment of the area when Columbia, Maryland, was planned.

Immediately north of the property, east of the house on the north side of Berger Road, is a parcel of land zoned "New Town," which currently is being developed by the Howard County Research and Development Corporation to accommodate business or industry of some kind. Farther to the north lies the Snowden River Parkway, a divided highway and major thoroughfare for Columbia. North of the Parkway stands the Village of Owen Brown, which is part of Columbia.

Oakland Mills Road, which abuts the eastern border of the property, runs roughly north to south, abutting the open end of Berger Road and intersecting the Snowden River Parkway. On the southeast corner of the intersection of the Parkway and Oakland Mills Road stands a sign proclaiming "Guilford Industrial Center." East of the property, across Oakland Mills Road, is a warehouse or plant. Near this is another sign: "Guilford Industrial Center — East." Slightly farther south lies a parcel of land under development as another warehouse or plant. Farther to the east of these properties is a parcel belonging to the General Electric Company, known as Appliance Park — East.

Immediately south of the Dorsey property run the tracks of the Baltimore and Ohio Railroad. Between the property and the tracks sits the manufacturing plant and warehouse of the Ryland Company, which builds prefabricated houses. Other warehouses also lie in this vicinity, and together they generate considerable rail and truck traffic. The railroad tracks skirt the northern portion of Guilford; the area contains small and medium-size houses which are much older than those situated in Owen Brown and Columbia, to the north.

Finally, to the west of the single house on the north side of Berger Road lies an empty grassed lot designated New

Town Open Space. And farther to the west, past the dead end of Berger Road, the land slopes downward and leads to a large site of manufacturing and industrial firms, notably Eastern Products Corporation.

In summary, we think the circuit court aptly described the property in its Decision and Order when it wrote:

"The situation, as evident from a description of the surrounding properties and their uses, is a parcel of residentially zoned land almost totally surrounded by manufacturing uses and separated from any residential development by a divided highway to the north and railroad tracks to the south. The publicly-declared use of that area, as the signs indicate, is industrial or light manufacturing. Development is continuing for industrial uses for this property. No residential development is occurring in the immediate vicinity of the subject parcel. It sits alone as a residentially zoned piece of land (along with the small cluster of five houses) while industrial use and development continues around it."

According to the record, the Dorsey property was originally zoned R-20 (Residential, 20,000 square feet minimum lot size). In the mid-1970's however, the Howard County Office of Planning and Zoning (OPZ) developed a comprehensive rezoning plan, and as a part of which they recommended that the property be reclassified R-12. Appellee opposed this and requested an M-1 zone. Nevertheless, in October 1977, the Howard County Council adopted the comprehensive rezoning plan as recommended by the OPZ.

Appellee attacked the comprehensive plan by filing a petition with the Howard County Planning Board in March 1978, requesting an M-1 zone for his property.[1] The Planning Board reviewed the petition and the opinion of the OPZ on the matter, and ultimately recommended to the

---

1. ZB Case No. 710.

Howard County Zoning Board that the petition be denied. We quote from the Planning Board's recommendation in part, as follows:

> "The Board notes that the parcel in question is practically surrounded by Industrial Zoning classifications and is of the opinion that the parcel in question probably should have been zoned in such a classification.

> On the other hand, the zoning authority apparently considered this parcel in its study and review prior to the adoption of the Comprehensive Zoning on October 3, 1977, and chose to classify it in the R-12 District, it previously having been zoned in the R-20 District.

> The Planning Board's review of the above cited documentation reveals no evidence of a mistake in the legal sense, in reference to the zoning of this parcel as part of the Comprehensive Zoning Maps adopted October 3, 1977.

> The Planning Board also finds no evidence of change in the character of the neighborhood of the subject parcel subsequent to October 3, 1977."

Appellee's petition and the Planning Board's recommendation were then forwarded to the Howard County Zoning Board for its decision.[2] In its September 8, 1978, Decision and Order the Zoning Board reviewed the evidence and testimony presented at its August 7, 1978, hearing on

2. In view of the fact that, ultimately, appellee was appealing the *Howard County Council's* decision to zone his property R-12 (since the change from R-20 to R-12 was made when the County Council adopted the Comprehensive Zoning Plan) it is interesting to note that the Howard County Council and the Howard County Zoning Board are one and the same thing. The County Council sits as the Zoning Board to decide questions pertinent to the County and to institute zoning maps, general plans, development plans, zoning areas and zoning changes with respect to large and small areas of Howard County. Its authority in this is granted by the Howard County Code, §§ 16.200 to 16.206, and its decisions are subject to judicial review in accordance with § 16.207.

the petition, and denied appellee's request after making the following findings of fact and conclusions of law:

"1. That the [Zoning] Board had considered the subject parcel in the course of its deliberations in formulating the comprehensive zoning map, a part of the Comprehensive Zoning Plan adopted October 3, 1977, held a specific public hearing thereon and at that time the parcel had been reclassified from an R-20 to an R-12 residential classification.

2. The Board further finds that there was no mistake in placing this parcel in the R-12 zoning classification at that time.

3. The Board agrees with the finding of the Department of Planning and Zoning of Howard County that the proposed zoning change is not in accordance or in harmony with the land use as shown on the Howard County General Plan adopted December 6, 1971, as amended on August 2, 1976. . . .

4. The Board finds that there was no evidence of change in the character of the neighborhood subsequent to the adoption of the aforesaid amendment to the General Plan of Development of Howard County and subsequent to the adoption of the Comprehensive Zoning Plan of Howard County on October 3, 1977.

5. That a reclassification of the subject property as requested would further isolate a substantial residential area from the Guilford residential neighborhood and would have an adverse effect on other residential property fronting on Berger Road."

In accordance with provisions of the Howard County Code [3] appellee appealed the Zoning Board's decision to the

_____

3. Howard County Code, § 16.207, *Judicial Review.*

Circuit Court for Howard County,[4] where, after a hearing on April 24, 1979, the Zoning Board's decision was reversed. In his Petition in Support of Appeal appellee alleged, *inter alia,* that: the decision of the Zoning Board was devoid of any competent, material and substantial evidence, in view of the entire record as submitted; the Zoning Board's findings were contrary to the evidence presented at the hearing; its decision was so grossly erroneous, when viewed in the light of the evidence produced at the time of the hearing, as to imply bad faith, and that its failure to grant the application as requested denied the appellee all reasonable use of his property and was therefore tantamount to confiscation without compensation.

In its September 17, 1979, Decision and Order, which was admirably thorough and well-reasoned, the circuit court carefully reviewed the situs of the property, the zoning background and the structure of court review of zoning decisions in Maryland, and made the following findings of fact and conclusions of law. The court found the evidence insufficient to establish that the Zoning Board's (or the County Council's) actions were confiscatory, or so erroneous as to imply bad faith. Nor, in the court's view, was there any evidence to indicate change in the character of the neighborhood since the enactment of the comprehensive plan. However, the court ruled that the record did establish "mistake" in the council's 1977 decision to zone the property R-12. The circuit court held that the entire record presented strong and substantial evidence that the council either "failed to take into account pertinent evidence, failed to recognize trends that were reasonably foreseeable, [or] failed to consider the full body of the evidence and to give appropriate weight to that evidence" in reaching its decision. The court therefore ruled:

> "[T]hat the zoning of this property in 1977 from R-20 to R-12 was in error; that the issue of the proper zoning of this parcel is not fairly debatable

---

4. In the Circuit Court for Howard County, No. A-9309, filed October 13, 1978.

and that the appellant has met his burden of demonstrating that the evidence does not substantially support the action of the Board. The denial of proper zoning of this property in 1977 and in the present petition was arbitrary and without proper foundation."

The court ordered that the present zoning of appellee's property be M-1, that the Zoning Board's September 8, 1978, decision be reversed, and that the case be remanded to the Board for proceedings consistent with the court's opinion.

In this appeal appellants argue, in essence, that the record below contains no strong or substantial evidence of "mistake" in the council's 1977 decision; and that, under the standard applicable in this case, the council's decision was "fairly debatable," and therefore not subject to reversal by the circuit court. Appellants further argue that assuming such mistake was established, nevertheless, the circuit court rezoned the property M-1 when it was without power to do so. We find merit in neither argument.

We shall begin to address these issues with observations on the standard of judicial review applicable in cases such as this. The standard, as applied to decisions of administrative agencies in general, and to those of zoning boards in particular, has been stated and restated in many decisions of this Court and the Court of Appeals. Most recently, in *Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383 (1979), the Court of Appeals wrote, at 394-96:

"[W]e have held that courts of this state are without power to interfere with 'any exercise of the legislative prerogative within constitutional limits, or with the lawful exercise of administrative authority or discretion.' However, such administrative discretion does not go unchecked. The judicial branch of the government ordinarily may, through appeal, the writ of mandamus, by injunction, or otherwise, correct any abuse of discretion by administrative agencies or review

their actions when arbitrary, illegal, capricious or unreasonable. *Heaps v. Cobb, supra,* 185 Md. at 379; *Dickinson-Tidewater v. Supervisor, supra,* 273 Md. at 255; *Hecht v. Crook, supra,* 184 Md. at 280-81. However, the scope of judicial review of decisions by administrative agencies is narrow, recognizing that board members have expertise in a particular area and ordinarily should be free to exercise their discretion as such. *Finney v. Halle,* 241 Md. 224, 216 A.2d 530 (1966). Accordingly, this Court adheres to the proposition that a reviewing court will not substitute its judgment for that of an administrative board where the issue is fairly debatable and the record contains substantial evidence supporting the administrative decision. *E.g., Mont. Co. v. Woodward & Lothrop,* 280 Md. 686, 376 A.2d 483 (1977), *cert. denied sub nom. Funger v. Montgomery Co.,* 434 U.S. 1067 (1978); *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A.2d 757 (1967). *See also Heath v. M. & C.C. of Baltimore,* 187 Md. 296, 49 A.2d 799 (1946); *Oppenheimer, supra,* at 209.

When reviewing an administrative decision for arbitrariness or capriciousness, a court must first determine whether the question before the agency was fairly debatable. In *Eger v. Stone,* 253 Md. 533, 542, 253 A.2d 372 (1969), we defined the term 'fairly debatable':

We have made it quite clear that if the issue before the administrative body is 'fairly debatable', that is, *that its determination involved testimony from which a reasonable man could come to different conclusions,* the courts will not substitute their judgment for that of the administrative body, in the absence of an unconstitutional taking of private property for public use without the payment of just compensation. . . . [emphasis supplied]" (Footnotes and citations omitted).

Or, as this Court stated in *Kanfer v. Montgomery County Council,* 35 Md. App. 715, 730 (1977), citing *Bosley v. Hospital for Consumptives,* 246 Md. 197, 204 (1967): ". . . the appellate court may not substitute its judgment for that of the zoning body and should affirm when the latter's decision is supported by substantial evidence." And, lately, in *Sedney v. Lloyd,* 44 Md. App. 633, 637 (1980), we had occasion to note:

> "The 'fairly debatable' test is analogous to the 'clearly erroneous' standard commonly applied under Md. Rules 886 and 1086. A court must consider all of the evidence before the zoning authority; the decision is 'fairly debatable' if it is supported by substantial evidence on the record taken as a whole." (Citations omitted.)

In *Sedney* we cited *Board v. Oak Hill Farms, Inc.,* 232 Md. 274, 283 (1963), wherein the Court of Appeals wrote:

> "Whether the test of substantial evidence on the entire record or the test of against the weight of all the evidence is followed, the courts have exercised restraint so as not to substitute their judgments for that of the agency and not to choose between equally permissible inferences or make independent determinations of fact, because to do so would be exercising a nonjudicial role. Rather, they have attempted to decide whether a reasoning mind could reasonably have reached the result the agency reached upon a fair consideration of the fact picture painted by the entire record."

And, as the Court of Appeals stated in *County Comm'rs v. Brown,* 253 Md. 632, 640 (1969), citing *Oak Hill Farms, supra:* "[i]n the context of a zoning case, 'substantial evidence' means 'more than a scintilla'; such evidence 'as a reasonable mind might accept as adequate to support a conclusion'; and 'enough to justify, if the trial were to a jury, a refusal to direct a verdict.'"

702

In *Hoy v. Boyd,* 42 Md. App. 527, 533 (1979), we observed: "There is a strong presumption of the correctness of comprehensive rezoning. Consequently, the burden of proving mistake or change is a heavy one. *Stratakis v. Beauchamp,* 268 Md. 643, 652-3, 304 A.2d 244 (1973); *Boyce v. Sembly,* 25 Md. App. 43, 49-50, 334 A.2d 137 (1975)." Unless this burden is met, a zoning authority's action must be presumed to remain "fairly debatable," and the action cannot be attacked on grounds of "mistake," *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661, 671-72 (1970).

We discussed the concept of zoning "mistake" or "error" at some length in *Boyce v. Sembly,* 25 Md. App. 43, 50-52 (1975):

"[I]t is necessary to understand the inherent nature of the terms 'mistake' or 'error' as they are used in zoning law. A perusal of cases, particularly those in which a finding of error was upheld, indicates that the presumption of validity accorded to a comprehensive zoning is overcome and error or mistake is established when there is probative evidence to show that the assumptions or premises relied upon by the Council at the time of the comprehensive rezoning were invalid. *Error can be established by showing that at the time of the comprehensive zoning the Council failed to take into account then existing facts, or projects or trends which were reasonably foreseeable of fruition in the future, so that the Council's action was premised initially on a misapprehension.* Bonnie View Club v. Glass, 242 Md. 46, 52-53, 217 A.2d 647, 651 (1966); *Jobar Corp. v. Rodgers Forge Community Ass'n.,* 236 Md. 106, 112, 116-18, 121-22, 202 A.2d 612, 615, 617-18, 620-21 (1964); *Overton v. County Commissioners,* 225 Md. 212, 216-17, 170 A.2d 172, 174-76 (1961); *see Rohde v. County Board of Appeals,* 234 Md. 259, 267-68, 199 A.2d 216, 218-19 (1964). Error or mistake may also be established by showing that events occurring subsequent to the comprehensive zoning have

proven that the Council's initial premises were incorrect. As the Court of Appeals said in *Rockville v. Stone,* 271 Md. 655, 662, 319 A.2d 536, 541 (1974):

'On the question of original mistake, this Court has held that when the assumption upon which a particular use is predicated proves, with the passage of time, to be erroneous, this is sufficient to authorize a rezoning.'

*See Rohde, supra,* at 234 Md. 267-68, 199 A.2d 220-21; *England v. Rockville,* 230 Md. 43, 45-47, 185 A.2d 378, 379-80 (1962); Pressman v. Baltimore, 222 Md. 330, 338-39, 160 A.2d 379, 383 (1960); *White v. County Board of Appeals,* 219 Md. 136, 144, 148 A.2d 420, 423-24 (1959); *cf. Dill v. The Jobar Corp.,* 242 Md. 16, 20-21, 24, 217 A.2d 564, 567-68 (1966); *Marcus v. Montgomery County Council,* 235 Md. 535, 540-41, 201 A.2d 777, 780 (1964); *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 558, 105 A.2d 219, 221-22 (1954); *Wakefield v. Kraft,* 202 Md. 136, 144-45, 149, 96 A.2d 27, 30 (1953); *Hoffman v. City of Baltimore,* 197 Md. 294, 307, 79 A.2d 367, 373-74 (1951).

It is presumed, as part of the presumption of validity accorded comprehensive zoning, that at the time of the adoption of the map the Council had before it and did, in fact, consider all of the relevant facts and circumstances then existing. Thus, *in order to establish error based upon a failure to take existing facts or events reasonably foreseeable of fruition into account, it is necessary not only to show the facts that existed at the time of the comprehensive zoning but also which, if any, of those facts were not actually considered by the Council.* This evidentiary burden can be accomplished by showing that specific physical facts were not readily visible or discernible at the time of the comprehensive zoning, *Bonnie View Club, supra,* at 242 Md. 48-49, 52, 217 A.2d 649, 651

(mineshaft and subsurface rock formation); by adducing testimony on the part of those preparing the plan that then existing facts were not taken into account, *Overton, supra,* at 225 Md. 216-17, 170 A.2d 174-75 (topography); *or by producing evidence that the Council failed to make any provision to accommodate a project, trend or need which it, itself, recognized as existing at the time of the comprehensive zoning, Jobar Corp., supra,* at 236 Md. 116-17, 202 A.2d 617-18 (need for apartments). *See Rohde, supra,* at 234 Md. 267-68, 199 A.2d 221. Because facts occurring subsequent to a comprehensive zoning were not in existence at the time, and, therefore could not have been considered, there is no necessity to present evidence that such facts were not taken into account by the Council at the time of the comprehensive zoning. Thus, *unless there is probative evidence to show that there were then existing facts which the Council, in fact, failed to take into account,* or subsequently occurring events which the Council could not have taken into account, *the presumption of validity accorded to comprehensive zoning is not overcome and the question of error is not 'fairly debatable.'"* (Footnotes omitted; emphasis added.)

With the applicable standard of review, presumptions and burden of proof clearly in mind, we turn to consider the record of the evidence presented.

The evidence and testimony presented at the hearing established the following facts. The Howard County Council adopted a General Plan for the county on December 6, 1971. According to the zoning map accompanying the plan, the Dorsey property was zoned R-20, and shown clearly north of, and separate and apart from, the neighborhood of Guilford. The latter's northern boundary was drawn to coincide with the Baltimore and Ohio Railroad tracks previously described. The property was shown lying in an area labeled "Special Study South," which incorporated very large areas

of industrial, New Town land, including the General Electric plant.

In 1973, efforts to rezone residential land within the neighborhood, as well as the general encroachment of surrounding industry, impelled Guilford residents to approach the Community Development Committee (CDC) for help. At CDC's initiative, OPZ began a pilot area study (later to be known as the Guilford Pilot Study) to determine whether preservation of the Guilford neighborhood made economic sense to the county and, if it did, to propose a plan to achieve that end. As a result of the study, OPZ determined that Guilford could and should be preserved; that, as part of such preservation, the Guilford Elementary School should be retained; and that, to justify the school's continued existence, it was necessary to increase residential density within the community (or, at the very least, to preserve the residential density then existing). The comprehensive plan developed from the study was reviewed and ultimately approved by the Planning Board and County Executive, and accepted by the CDC.

The CDC wanted a second opinion and so retained the services of Louis Earl Armiger, Jr., a qualified planning consultant. Appellants' statement, that "Armiger's conclusion essentially confirmed the validity of the pilot study; both emphasized the need to achieve higher density in the Guilford Community" is, in our view, somewhat disingenuous. Armiger testified for appellee Dorsey. He stated that he had been hired by the CDC to prepare an evaluation of the Guilford Plan prior to the passage of Howard County Council Resolution No. 43, of the 1976 Legislative Session, wherein the 1971 Comprehensive Zoning Plan was amended to include the Dorsey property as part of a new Guilford Land Use Plan. Armiger testified that Dorsey's property, and the 9 or 10 acres which comprised the rest of the residential "island" north of the railroad tracks (the "Berger Road area"), was never considered a part of Guilford by the 1971 General Plan. In fact, he stated that of all the maps which he was shown while making his study, none so much as showed the property in any detail.

Furthermore, he stated that the CDC had never included, much less considered, the property as part of the Guilford Plan prior to the 1976 amendment; they had only recommended that the Guilford Plan include land *south* of the railroad tracks. The record of Armiger's testimony, though at times hard to follow,[5] is nevertheless instructive, and bears repetition here. We quote it in part, as follows:

> "(Mr. Arminger [sic]) O.K. there might be a little confusion on my part had that this property was ever in the Guilford Plan. The maps that I showed are the maps that I was showed when I was hired by CDC to evaluate the Guilford Plan. I was evaluating a plan as as contained in the; Well the Guilford Plan actually came out as a part of the March 1st, 1975 Howard County Housing Plan. In that plan the Guilford Plan as indicated on page . . . five dash thirtysix and this is the plan that we went by. It did not include any areas north of the railroad tracks. So the plan we evaluated was from the railroad track south. So we didn't even consider it, this area up here as part of the Guilford Plan. And . . . my understanding really, it never was a part of the Guilford Plan. It was taken in separate because this is where developed houses. So when we evaluated Guilford Plan our objective . . . purpose we were hired was to determine whether nor not it made sense for . . . to implement the Guilford Plan was called for protecting and preserving the Guilford as resident the Guilford neighborhood as residential as oppose to letting a natural course force . . . more industrial before it can take place and letting it go.
>
> There was a lot of thinking, I think on the Community Development Committee's part of the time that made more sense to the county to let it go. That it is too small of an area for to really to justify

---

5. The seeming incoherence of this testimony should not reflect unfavorably upon the persons testifying. We think the fault lies entirely with the manner in which the testimony was recorded and transcribed.

the tremendous public expenditure to make it a viable neighborhood. So in our study we determined that yes it did make sense for the county to protect the Guilford neighborhood. The Guilford residential neighborhood. Only if a couple of things happen only if the county did a couple of things. That is number one, stipulate it new residential development in the area so that you can justify the expenditure for public facilities that were needed in all that wood area would be a viable neighborhood. Secondly, that you cut off the industrial encroachment from the north here and the place to cut it off logically was to be those railroad tracks. However, since HRD has New Town land which is indicated as referring ... south of the railroad tracks extending into the area that we consider as the Guilford neighborhood south of the railroad tracks since thats [sic] already committed to employment. We determined that the place to cutoff this encroachment was between this New Town land and these properties known as Carns and people. Property shown here is R-A-1. So that was our recommendation regarding this area in the Guilford Plan. This would always consider as a part of an industrial area. The cutoff logically would have been the railroad tracks south of the subject property but since a pattern was already committed to non-residential use south of the railroad tracks we recommended cutting it off as the northern boundary."

Armiger also testified that the proper use of the subject property was M-1, and that zoning the property R-12 had been a mistake. He stated, in his opinion, the property could not reasonably be used for residential development because of the presence of surrounding industrial uses and lack of adequate access to the land. Appellee testified likewise.

The testimony of appellants' expert witness, Joseph Rutter, an OPZ planner, is even more interesting. Rutter testified that he had been involved with the Guilford project

from its inception in 1973. He stated that, as a result of the Guilford Pilot Study, the General Plan of 1971 was amended to include the Berger Road area because it was "stable residential," and because it was necessary to include the property in the plan to insure the continued existence of the Guilford Elementary School and, ultimately, the Guilford community. More importantly, although Rutter testified that neighborhood boundaries are not defined until and except by amendment to the General Plan, yet, like Armiger, he testified that the General Plan of 1971 did not establish the Guilford neighborhood north of the railroad tracks. In essence, he stated that although the 1976 amendment included the property within the Guilford *Land Use Plan,* the amendment did not include it in the Guilford *neighborhood,* since the 1971 neighborhood boundaries were not affected by Resolution No. 43. We quote from his testimony on direct examination:

"[Resolution No. 43] . . . is an amendment to the 1971 General Plan to change the land uses for the Guilford Community. As part of this resolution what was also adopted and made part of the resolution is a map of the Guilford Community . . . I believe that this map and resolution clearly show the subject property is part of the Guilford Community. Furthermore there has been some reference to the comments of the Office of Planning and Zoning in this case and in the findings a statement from the Office of Planning and Zoning signed by Mr. Harris states that the proposed zoning change is not in accordance or in harmony with the land use as shown on the Howard County General Plan adopted December 6, 1971 amended August 2nd, 1976. The amended General Plan does show this property and the surrounding properties as stabled [sic] residential. I might point out that the 1971 General Plan also shows this series of properties as stabled [sic] residential. The major difference as far as this group of property is concerned is that in the 1971 General Plan the

general line that follows the railroad did exclude these properties but as a result of the study which began in 1974 the recommended Guilford Plan and Pilot Project which was included in the housing plan which has also been introduced as recommended by the Office of Planning and Zoning did intend to include these properties and as a result of that pilot project the Office of Planning and Zoning recommended the adoption of the amendment to the General Plan which was done in August of 1976. The neighborhood seventyfour as referred to in the Office of Planning and Zoning report is also clearly what the adopted amendment to the general plan was. A neighborhood numbered seventyfour there are no references by name to neighborhoods in the 1971 General Plan and therefore continuity even though we call it the Guilford neighborhood amendment to the general plan it is referred to by number. . . .

(Mr. Green) At what point in time if you can possible [sic] date it, were the boundaries of the Guilford neighborhood determined?

(Mr. Rutter) For the purpose of our study it would have been approved in the Fall of 1974 and this is the time when the community survey was conducted for the purposes of the community survey. The neighborhood or study area boundaries as they were referred to in the pilot project it is study area boundaries . . . were defined so that who would be interviewed would be determined. *However the neighborhood boundaries aren't defined until you amend the general plan. That's the only place that they can be defined.*

(Mr. Green) Were you present at any occasion where there was discussion regarding the inclusion and exclusion of the neighborhood north . . . that portion north of the railroad track?

(Mr. Rutter) There was no discussion of whether or not to include that area in the office of planning

and zoning's ... preparation and ... review of the pilot study. *It was right from the beginning included because of being a stable residential area adjacent to the neighborhood seventyfour and* because of being stable residential area on the seventyone general plan — *not being compatible with the surrounding commercial industrial land uses in special study area south shown on the general plan.*

(Mr. Green) Mr. Arminger [sic] has testified that certain specific emphasis were to be given to portions of the neighborhood south of the railroad tracks. Is this inconsistent with the inclusion of that area north of the railroad tracks?

(Mr. Rutter) No it is not and in fact because of the nature of the Guilford Community any attempts to enlarge the community in a logical manner were made. *The existing population was so low and one of the critical elements of the Guilford community is the neighborhood school and I think one of the initial motivated forces for the community to request and become involved with the office of planning and zoning was the fear of losing that school. So the additional residences although there is only four or five residents in this northern pocket here, it could be added in to the school generation.* It certainly would not eliminate fifteen acres of potential development land." (Emphasis added.)

However, upon cross-examination Rutter admitted:

"(Mr. Goldberg) I now want to show you a plat which you say is part of Resolution number

(Mr. Rutter) Fortythree.

(Mr. Goldberg) Fortythree. I'm going to show you Resolution number fortythree. Show me that any place on the map where it says that Guilford Plan is that this is the subject property subject property is in neighborhood number seventyfour as the planning staff says it is —

(Mr. Rutter) The —

(Mr. Goldberg) the resolution. In one word saying that its [sic] in seventyfour.

(Mr. Rutter) No *the resolution is stated . . . an amendment to the 1971 General Plan.*

(Mr. Goldberg) *But it doesn't. Does it change the neighborhood?*

(Mr. Rutter) *No it doesn't change the neighborhood.*

(Mr. Goldberg) Does it put the, does it show — *does it say anything in there that it puts this piece of property in the neighborhood number seventyfour?*

(Mr. Rutter) *It puts it in the land use of the Guilford Community.*

(Mr. Goldberg) *Land use of the Guilford Community but not the neighborhood number seventyfour.*

(Mr. Rutter) *The neighborhood number is not in the resolution no. To my knowledge.*
. . .

(Mr. Goldberg) Alright then, I'm looking at the plat that's attached to resolution number seventy . . . number fortythree. You have not shown the fact that the only link between this neighborhood of Guilford and the property that's the subject of this hearing and the fifteen acres the grand total of fifteen acres maximum is only connected by the road. You don't show any industrial in between.

(Mr. Rutter) I think its [sic] clearly its [sic] clearly shown that —

(Mr. Goldberg) Let me finish and I'll give these questions —

(Mr. Rutter) It is clearly shown on the map that it is only connected by the road. The road is the connection.

(Mr. Goldberg) And you say then this was done because you needed this population to show the requirements of the school?

> (Mr. Rutter) Its its [sic] part of the school service area that I refer to is the basis for these neighborhood delineations on the 1971 General Plan." (Emphasis added.)

Upon review of this and other evidence in the record [6] the circuit court ruled that the County Council had committed "mistake" in 1977 by zoning the property R-12, and that the Zoning Board "refused to zone the property industrial in the wake of clear and strong evidence that a residential zone is improper in this instance." We wholeheartedly agree with the circuit court.

It was obvious from Armiger's testimony that the property is not now, nor has it ever been, included within the boundaries of the neighborhood of Guilford. Rutter's testimony supported him in this. However, the area residents who testified claimed that they had "always considered" the property part of the Guilford neighborhood and the Board apparently relied upon this evidence, disregarding Armiger's and Rutter's statements. This was error. As we said in *Boyce v. Sembly, supra,* 25 Md. App. at 53:

> "... *the opinion or conclusion of an expert or lay witness is of no greater probative value than that warranted by the soundness of his underlying reasons or facts. Surkovich v. Doub,* 258 Md. 263, 272, 265 A.2d 447, 451 (1970); *Anderson v. Sawyer,* 23 Md. App. 612, 618, 329 A.2d 716, 720. The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or substantial enough to show error in a

---

6. In addition to the testimony which we have reviewed, the record contains the testimony of area residents to the effect that they had always considered the property part of the Guilford neighborhood. The circuit court also recited the following passage from the Recommendation of the Planning Board:

"The Board notes that the parcel in question is practically surrounded by Industrial Zoning classifications and is of the opinion that the parcel in question probably should have been zoned in such a classification."

> comprehensive rezoning *unless the reasons given by the witness as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough* to do so. *Stratakis, supra,* at 268 Md. 655, 304 A.2d 250; *Coppolino v. County Board of Appeals of Baltimore County,* 23 Md. App. 358, 371-72, 328 A.2d 55, 62 (1974)." (Emphasis added.)

The circuit court correctly noted that "what is a neighborhood is not subject to strict definition and is different in different circumstances," citing *Border v. Grooms,* 267 Md. 100, 109-10 (1972) and *Clayman v. Prince George's County,* 266 Md. 409, 417-19 (1972). But, as we recently noted in *Sedney v. Lloyd, supra,* 44 Md. App. at 639: "The neighborhood must be limited to the 'immediate environs of the subject property' and cannot extend for miles in all directions. *Pattey v. Board of County Commissioners of Worcester County, supra,* 271 Md. at 363, 317 A.2d at 148." And, at 640: "Normally, the greatest deference must be allowed the zoning authority's judgment regarding the scope of the neighborhood to be drawn; however, the legal requirement remains that the neighborhood delineated by the authority must be 'reasonable'," citing *Pattey, Id.* Without repeating the description of the property and its environs earlier given, we think it obvious that the property was not part of the Guilford neighborhood; that it was unsuited for residential development; that the character of the surrounding parcels made it extremely unlikely that residential development would occur in the vicinity, and that therefore the property ought to have been zoned M-1, in conformity with the usage of surrounding land. From the record of the testimony it appears that the Board appreciated the fact that a residential zone was improper in this instance, but that it nevertheless imposed that classification in an attempt to add to the residential area feeding the Guilford Elementary School. Rutter testified that the only basis for adding the Berger Road area to the Guilford Land Use Plan was to justify the continued existence of the school. This was

714

improper. The Court of Appeals stated in *Chayt v. Maryland Jockey Club,* 179 Md. 390 (1941), at 395:

> "In order to impose restrictions some valid exercise of the police power must be proven. But such power is invoked for the protection of the property restricted and not to give protection to surrounding property."

And, in *England v. Rockville,* 230 Md. 43 (1962), at 47, the Court held:

> ". . . benefit to neighboring residents is not a proper test. Restrictions imposed under the police power must be related to the general welfare and cannot be supported on the basis of benefit to surrounding property."

And, in *Benner v. Tribbitt,* 190 Md. 6 (1947), at 20:

> "There is no magic in the word 'zoning', but there is a wide difference between exercise of the police power in accordance with a comprehensive zoning plan, which imposes mutual restrictions and confers mutual benefits on property owners, and arbitrary permission to A and prohibition to B to use their own property, at the pleasure of neighbors or at the whim of legislative or administrative agencies."

Under all the circumstances of this case, therefore, we agree with the circuit court that it was not fairly debatable, not something over which reasonable minds could differ, that this property should be zoned M-1, consistent with contiguous parcels. The Zoning Board's failure to do so was arbitrary, capricious and an abuse of discretion.[7]

---

7. We cannot emphasize too strongly that, especially in cases of this type, our decision must rest upon application of general rules to the facts and circumstances peculiar to each case. Thus, it is upon the particular facts and circumstances of this case, taken as a whole, that we base our holding here today.

Finally, appellants argue that the circuit court "violated the separation of powers doctrine by ordering the Dorsey property rezoned M-1." Appellants cite the Court of Appeals' decision in *Montgomery County v. Shiental,* 249 Md. 194, 199 (1968), as authority for the proposition that "courts lack the power to rezone property, even upon a showing that the challenged classification is arbitrary and capricious." Not only is this a misstatement of the Court's holding, but *Shiental* is altogether inapposite. The question before the Court in *Shiental* was whether the zoning authority had erred in refusing the appellant's request that his property be rezoned. The Court first enunciated the standard for review which we have outlined in this opinion. Then it ruled that the appellants had failed to present sufficient evidence to establish that the zoning authority's denial of rezoning was arbitrary and capricious, so that the authority's decision remained "fairly debatable," not subject to reversal. But when, in so doing, the Court wrote that "[t]he lower court had no power to rezone," it was merely restating the rule that courts may not substitute their judgment for the expertise of the zoning authority, and that the latter's decisions must be upheld unless substantial evidence to the contrary is presented. Such evidence was presented in this case.

Furthermore, the circuit court's review of the Zoning Board's decision in this case was governed by the provision of the Howard County Code, § 16.207, "Judicial Review," which specifically provides in part, in subsection (b):

"The review of the record of proceedings made before the zoning board shall be conducted by the court without a jury. In cases of alleged irregularities in procedure before the zoning board amounting to a denial of due process, not shown on the record, testimony thereon may be taken in the court. The court shall, upon request, hear oral argument and receive written briefs. Upon the hearing of such appeal, the action of the zoning board shall be presumed by the court to be proper

and to best serve the public interest. *The court may affirm the decision of the zoning board or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellants to a fair hearing before the board and a fair decision by the board may have been prejudiced because the zoning board's findings, inferences, conclusions or decisions were or are:*

. . . .

(5) So grossly erroneous as to imply bad faith; or

(6) Only in cases involving map amendments or a decision which changes the regulations, *unsupported by competent, material and substantial evidence in view of the entire record as submitted;* or

(7) Only in cases involving map amendments or a decision which changes the regulations, *arbitrary or capricious;* or

(8) Affected ' by other error of law." (Emphasis added.)

Under the circumstances, the circuit court's Order, "that the present zoning of this property be M-1, that the decision of the Howard County Zoning Board of September 8, 1978 be, and it is hereby, REVERSED and that the case is REMANDED to the Zoning Board for proceedings consistent" with its opinion, was proper.

*Judgment affirmed.*
*Appellants to pay the costs.*

# APPENDIX

LEGEND