468 A.2d 1353

## The MARYLAND–NATIONAL CAPITAL PARK AND PLANNING COMMISSION

v.

## FRIENDSHIP HEIGHTS and The Hills et al.

No. 182, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 6, 1984.

Certiorari Denied June 7, 1984.

**70**

Maria de Loreto Rodriguez, Silver Spring, with whom were Arthur S. Drea, Jr. and Sanford E. Wool, Silver Spring, on brief, for appellant.

Edward L. Genn, Rockville, with whom was Gilbert J. Genn, Rockville, on brief, for appellees, Friendship Heights and its Village Council.

Norman M. Glasgow, Rockville, with whom were John F. McCabe, Jr., Christopher H. Collins and Wilkes, Artis, Hedrick & Lane, Chartered, Rockville, on brief, for appellee, Community Somerset Associates.

Argued before MOYLAN, WILNER and GETTY, JJ.

GETTY, Judge.

The history of the attempts by Community Somerset Associates (CSA), appellee, to develop the subject piece of land known as the Bergdoll Tract has been before the Court of Appeals on several occasions dating from *Funger v. Mayor & Town Council of Somerset,* 249 Md. 311, 239 A.2d 748 (1968). Friendship Heights encompasses the entire political subdivision known as the Special Taxing District of Friendship Heights and The Hills. It lies north of the District of Columbia, west of Chevy Chase and south of Somerset. The area is intensely developed and is situated on Wisconsin Avenue, one of the most heavily used arterials leading into the District of Columbia. Vehicular access to the Central Business District (CBD) is limited to four major streets: Wisconsin Avenue, a six lane, north-south arterial; Western Avenue, a four lane, east-west arterial; Willard Avenue, a four lane street; and Military Road, a two lane street through residential areas east of the CBD.

Since the adoption of the Sector Plan for the Friendship Heights CBD in 1974, Friendship has consistently opposed the development of what it terms, with some justification, a "ring road."[1] The decision herein, by the trial court, is based upon subject matter jurisdiction. Central to Friendship's appeal, however, is the construction of a section of that road. With this brief background, we shall proceed to the issues raised by the appeal and cross-appeal filed herein.

On December 1, 1981, Community-Somerset Associates (CSA) filed an application with The Maryland-National Capital Park and Planning Commission (M–NCPPC) for approval of a site plan for development of three high-rise multi-family structures on 18.19 acres of land in the Town of Somerset in Montgomery County. The site, known as the Bergdoll Tract, fronts on Wisconsin Avenue, 14.69 acres being zoned "R–H" (multi-family, high-rise planned residential, Sec. 59–C–2) and the northern 3.5 acres zoned "R–60" (residential, one family, Sec. 59–C–1). Included in the proposal is the construction, on private property, of a portion of Friendship Boulevard.

The M–NCPPC Planning Board held hearings on the application on January 21, 1982, and on March 18, 1982, and subsequently approved a portion of the site plan authorizing the construction of one building containing 210 units and including the proposed extension of Friendship Boulevard. With the consent of the applicant, CSA, action was deferred on the remainder of the plan. Partial approval of site plans is permitted by Sec. 59–D–3 of the Montgomery County Zoning Ordinance.

Thereafter, Friendship Heights and The Hills filed an appeal in the Circuit Court for Montgomery County, pursuant to Article 41, § 256 of the Maryland Code, the Adminis-

1. The term "ring road" derived initially from a proposal, rejected by the Council after Sector Plan hearings, to close Wisconsin Avenue and Western Avenue and replace them with a circle or ring road. The term was left in the proposal applying primarily to a loop around Wisconsin and Western Avenues.

trative Procedure Act (APA). This appellant was, according to the record, aggrieved by the decision authorizing the construction of Friendship Boulevard which, upon completion, will establish, in their view, a "ring road" connecting with Wisconsin Avenue and impacting adversely upon the residents of Friendship Heights.

The Circuit Court for Montgomery County, Judge Fairbanks, dismissed the appeal citing as his reasons therefor that site plan review by the M–NCPPC is not a contested case[2] under the APA and, therefore, the Circuit Court lacked subject matter jurisdiction to review the approval of the site plan. Notwithstanding its decision on the issue of jurisdiction, the trial court addressed the substantive issues of standing, sufficiency of the evidence and alleged procedural errors in the administrative hearing. The court did so, it stated, "for the purposes of judicial economy." The trial judge decided that the agency decision approving the site plan proposal demonstrates "beyond any doubt that this site plan received the most intensive study and review by the Board and its staff."

Friendship Heights and M–NCPPC both appealed from the court's dismissal of the case. The issues are:

1. Whether M–NCPPC, whose site plan approval was upheld by the Circuit Court, may appeal from that order.
2. Whether the Circuit Court properly dismissed the appeal of Friendship Heights for lack of jurisdiction.
3. Whether the M–NCPPC's site plan approval was supported by substantial evidence and was otherwise procedurally correct.

---

2. A "contested case" is defined in Article 41, § 244(d) as a proceeding before an agency in which the legal rights, duties, statutory entitlements, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing. The trial judge found no law or constitutional provision requiring a hearing in site plan review cases.

STANDING

The trial court found that Friendship Heights had standing to appeal from the action taken by M–NCPPC by reason of the expanded concept of the powers of the District and the Village Council articulated in *Smith v. Edwards,* 292 Md. 60, 437 A.2d 221 (1981). That case held that the Village Council had the implied power to engage in administrative and judicial proceedings to oppose intensification of development in Friendship Heights and The Hills.

CSA alleges that Friendship Heights lacks standing to appeal because the roadway under consideration is outside their boundaries, citing *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A.2d 289 (1967). Under *Bryniarski,* two conditions precedent must be met before a person has standing to appeal to the Circuit Court from an administrative decision:

1. He must have been a party to the proceeding before the Board; and
2. He must be aggrieved by the decision of the Board.

Conceding that Friendship Heights is a "party," CSA reasons that it is not "aggrieved" where the property directly affected is not within its boundaries.

We note that *Bryniarski* dealt with the rights of private citizens to appeal from administrative decisions and not with the standing of duly elected officials to act on behalf of their constituents. Five years after the decision in that case, moreover, the Legislature added to the APA Section 256A which states:

> For the purposes of this subtitle, the political subdivisions of this State and their agencies and instrumentalities have the status of an interested person, petitioner, or party, as the case may be, in all matters including appeals. (1972, Ch. 449)

Admittedly, the project involved is contiguous to Friendship Village. The southern boundary of the site coincides with the boundary between Somerset and Friendship Heights. Two Friendship Heights streets come to dead ends at or near

the southern site boundary which also marks the edge of the Friendship Heights Central Business District. Whether Friendship Boulevard is a "ring road" as alleged by Friendship Heights, or a private right of way controlled by a card operated automatic gate, as envisioned by M–NCPPC, we believe that Friendship Heights has demonstrated the requisite interest to be considered as an aggrieved party and, therefore, has standing to appeal from a decision that may adversely impact upon the safety, health and orderly development of appellant's district. On the issue of standing to appeal, as to Friendship Heights, we concur in the decision of the trial court.

A second issue of the right to appeal relates to the vicariously successful party in the Circuit Court, M–NCPPC. Generally, a party who prevails at the trial level may not appeal. *Offutt v. Montgomery County Board of Education,* 285 Md. 557, 404 A.2d 281 (1979). This principle, however, has exceptions. *Administrator, Motor Vehicle Admin. v. Vogt,* 267 Md. 660, 299 A.2d 1 (1973). The party favored by the trial court may appeal from a favorable judgment in order to preserve its right of review of adverse rulings. *Fennell v. G.A.C. Finance Corp. of Balto,* 242 Md. 209, 218 A.2d 492 (1966). The M–NCPPC, although nominally successful herein, maintains that it has been in fact prejudiced by the trial court's judgment that site plan review is not a contested case under APA. Typically, site plan decisions are appealed to the Circuit Court under the provisions of the APA. The decisions become final in thirty days and, when appealed, are regulated by specific provisions in the Act and by the "B" rules of the Maryland Rules of Procedure. The trial court's decision, unchallenged, would render M–NCPPC's decisions on site planning subject to attack under a mandamus, declaratory or injunctive action for a three year period, rather than for thirty days. Completion of approved development projects would, therefore, be severely compromised.

In *Vogt, supra,* the Court of Appeals dismissed the cross appeal of the successful party, because the trial court explicitly confined its decision to the issue mentioned in the judgment (unconstitutionality of a statute). Additionally, the issues raised by the cross appeal were considered in the opinion, but an appeal will not lie from the trial judge's opinion, since it forms no part of the judgment. *Ibid.,* 267 Md. p. 665, 299 A.2d 1. We believe the present case is distinguishable. Here, the court attempted to decide the substantive issues and conditioned that determination upon appellate review of the question of jurisdiction. Judge Fairbanks said:

> "Therefore, assuming that another tribunal may rule that jurisdiction under the Administrative Procedure Act does exist, the questions of standing, administrative procedures, sufficiency of evidence and the like are presented."

*Fennell, supra,* makes it clear that a cross appeal must be taken by the party prevailing in the trial court if he wishes to preserve *adverse* rulings. *See Reece, Adm'r v. Reece,* 239 Md. 649, 212 A.2d 468 (1965). The trial court herein explicitly held that site plan review is not a contested case under the Administrative Procedure Act. Despite the court's approval of the M–NCPPC fact finding, the judgment rendered was dismissal of the appeal for lack of subject matter jurisdiction. Clearly, M–NCPPC is aggrieved thereby and has the requisite standing to appeal from this adverse decision. The trial court properly so held.

## JURISDICTION

The trial court filed a comprehensive Memorandum and Order concluding that Section 59–D–3 of the Montgomery County Code does not require a hearing in site plan applications and, therefore, the case is not a "contested case" as defined by statute. Consequently, the court held, no appeal is available and the court lacks jurisdiction to entertain an appeal under the Administrative Procedure Act. We disagree.

Jurisdiction under the statute is conferred by virtue of Art. 41, § 255 of the Act which reads:

> "(a) *Right to review*—Any party aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this subtitle."

The critical phrase is "contested case." If the proceeding constitutes such a case, an appeal under the statute is authorized. Article 41, § 244(d) of the Act provides the following definition:

> "*Contested case* means a proceeding before an agency in which the legal rights, duties, statutory entitlements or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing."

We believe that the trial court's interpretation of the pertinent statute is too narrow and inconsistent with the case law applicable thereto. The Act is a general grant of statutory review power to the Circuit Court over administrative decisions. Once the definitional standard of a contested case is met, there is no need or requirement for separate jurisdictional authority; entitlement to review is provided by Section 255 of the Act.

A hearing is required in site plan review by virtue of the Montgomery County Planning Board's Rules of Procedure. These rules have been adopted pursuant to authority granted to the agency under Section 245 of the APA.[3] We recognized in *Hopkins v. Md. Inmate Grievance Comm.,* 40 Md.App. 329, 391 A.2d 1213 (1978), that rules and regulations promulgated by an administrative agency cannot be waived, suspended, or disregarded as long as such rules and regulations remain in force. *See also Board of Education of Anne*

---

3. The rules confer important procedural benefits upon individuals, thus avoiding what would amount to unfettered discretion by the agency. For example, the rules require public hearings, notice to parties in interest, information from the public, cross-examination of witnesses, and reconsideration of final decisions upon timely motions filed.

*Arundel County v. Barbano,* 45 Md.App. 27, 411 A.2d 124 (1980).

Adherence to administrative agency regulations has been recognized in federal as well as state jurisdictions and has become known as the "Accardi Doctrine" following its adoption by the Supreme Court in *U.S. ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). There the Court vacated a deportation order of the Board of Immigration and Appeals because the Board and the Attorney General failed to follow their own regulations. Our recitation of the doctrine in *Hopkins, supra,* tracks the language from *United States v. Heffner,* 420 F.2d 809 (4th Cir.1970);

> "An agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."

We hold that a hearing is required "by law" under the rules adopted by M–NCPPC and, therefore, the proceeding is within the ambit of the APA as a contested case. The trial court's determination that it lacked jurisdiction to entertain the appeal is incorrect. Although the trial court herein stated that the case of *Prince George's County v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), is distinguishable, we note that the Court of Appeals held that the judicial review provisions of the APA were applicable to that case. In *Blumberg,* the Washington Suburban Sanitary Commission had no statutory provisions requiring the WSSC to hold hearings, nor were there any rules providing for a hearing as a matter of right.[4] The court, in deciding the applicability of APA, noted that the WSSC provided respondents with a hearing in that case. We discern no difference, for the purposes of this case, between the M–NCPPC and the WSSC. Both were created by the General Assembly as

---

4. Effective March 3, 1979, the WSSC adopted regulations providing for adjudicatory hearings as a matter of right where an individual's legal rights are adversely affected by a decision of the Commission.

state agencies responsible for providing services which would otherwise be the responsibility of the respective counties. The powers granted to each are similar; each has regional functions and responsibilities as the representative of the State of Maryland in carrying out its powers and duties. As state agencies, the procedures of each are governed by the APA. *Blumberg, supra; Katz v. Washington Sub. San. Comm.,* 284 Md. 503, 397 A.2d 1027 (1979); *O & B, Inc. v. Md. Nat'l Cap. P. & P.,* 279 Md. 459, 369 A.2d 553 (1977). The issue in *Katz* and in *O & B* was sovereign immunity; that does not, however, dilute the agency status of either for purposes of review under the Administrative Procedure Act.

 Additionally, we disagree with the trial court's determination that site plan review is a legislative function. Where an administrative body is resolving disputed questions of adjudicative facts concerning particular parties, it is engaged in a quasi-judicial function which requires a hearing. *Hyson v. Mont. Co. Council,* 242 Md. 55, 217 A.2d 578 (1966). The M–NCPPC's planning board action involves the application of statutory standards, under the authority set forth in Sec. 59–D–3, to the facts presented by the testimony and exhibits presented at the site plan review hearing. Where, as here, the administrative tribunal is under a duty to consider evidence and apply the law to the facts as found, thereby exercising some discretion, the function is quasi-judicial. *See Handlon v. Town of Belleville,* 4 N.J. 99, 71 A.2d 624 (1950), cited in *Eliason v. State Roads Comm.,* 231 Md. 257, 189 A.2d 649 (1959). The trial court, furthermore, found that "legal rights" and "statutory entitlements" of specific parties were determined in this case. The court should have concluded therefrom that procedural due process required a hearing. *Hyson, supra; Albert v. Pub. Serv. Comm.,* 209 Md. 27, 120 A.2d 346 (1956).

## SUBSTANTIAL EVIDENCE

 Under Md.Rule 1085 we will not ordinarily review any matter not raised and decided by the trial court. The

rule, however, permits us to review a point or question of law where the point or legal question was presented to the trial court thereby avoiding the expense and delay of another appeal to this Court. The question of substantial evidence to support the decision of the administrative agency was thoroughly briefed and argued in the Circuit Court. In fact, the trial judge decided the issue, but his decision, that he lacked jurisdiction to entertain the appeal, rendered his findings on substantive issues a nullity. We recognize that the trial judge's actions were designed to avoid further delay and expense to all parties concerned. In the same vein, we shall review the issues raised and decided by Judge Fairbanks.

The standard of review on appeal of administrative actions is whether a reasoning mind could have reached the factual conclusion decided by the agency. *Public Service Commission v. Baltimore Gas & Electric Co.*, 273 Md. 357, 329 A.2d 691 (1974). In his written opinion the trial judge said:

> "In an appeal from the ruling of an administrative agency the power of the reviewing court is restricted to a determination of whether or not the agency decision is supported by substantial evidence or is fairly debatable. This standard is so firmly embedded in the law as not to require citation of authority. A study of the extensive record in this case, including the transcript of the hearings held on January 14, January 19, March 25, and April 15, together with the Staff Report and all the maps, drawings, studies, inputs by citizens groups, demonstrate beyond any doubt that this site plan received the most intensive study and review by the Board and its staff. That differing conclusions might have been reached on some of this evidence presented, is of no consequence. The fact remains that the Board's findings and conclusions embodied in its written opinion of May 10, 1982 are fully supported by the evidence.
>
> To repeat, this court's function is not to review this extensive record and then conclude whether or not it

would have reached the same result as the Board, but simply to determine that the Board acted on the basis of substantial evidence in the record. The court so finds.

4) *Procedural Errors.*

Appellants have charged the Board with procedural errors, including failure to consider proffered evidence, misapplication of the provisions of the Sector Plan, substitution of conditions for evidentiary findings, and lack of proper findings and conclusions. The court has reviewed these charges and find them to be without substantial merit. Most of these complaints fall in the category of matters considered by the Board and determined adversly (sic) to the appellants. None is of such substance as to require reversal or remand. The charge of failure to make findings is not borne out by the record. The long and painful history of the Bergdoll Tract dictates that any action taken must be carefully and thoroughly considered, and the Board has done just that in this case.

CONCLUSION

"The extension of Friendship Boulevard from Western Avenue thru the Bergdoll Tract to Wisconsin Avenue has been part of every master plan, sector plan or other development project in this area since at least 1970 when the Bethesda Chevy Chase Master Plan was first adopted. Appellants have fought it every inch of the way, and have repeatedly presented their evidence in support of their opposition at every opportunity. They did so again before the Board and its staff in this case. Unfortunately for them the administrative agency charged with the responsibility for controlling and supervising planning and development, based on all the evidence, has approved the extension as part of its approval of the site plan at issue here, and this court cannot substitute its judgment for that of the Board."

Friendship Heights contends that the trial judge was in error on the issue of jurisdiction and with respect to his

conclusion that the agency decision was supported by substantial evidence. Central to all of the objections raised by Friendship Heights is the extension of Friendship Boulevard to which it strenuously objects, contending that a "ring road" [5] will sever the village. Friendship alleges that:

1. Under the Montgomery County Code, Sec. 49–57, it has veto power over the construction of any road lying partially within its boundaries.
2. The extension of Friendship Boulevard is not required by the sector plan.
3. The data used by the agency in its decision to build the road is not current and the road is not essential.
4. Expert testimony offered by Friendship was rejected by the agency.

We shall address the issues separately.

1.

Sec. 49–57 of the Montgomery County Code, in pertinent part, states:

> "Sec. 49–57. (a) Whenever a road lies partly within the incorporated area of the county and partly within a ... village or special taxing area therein which has jurisdiction over the construction or maintenance of that part of the road lying within such incorporated area, the entire length and width of such road may be constructed by the County or by the ... village or special taxing area in accordance with the laws, ordinances ... relating to the construction of county roads, or public ways of such ... village or special taxing area, as defined in the Annotated Code of Md., Art. 23B, sec. 74, in the same manner as if such road lay wholly within the unincorporated area of the county or wholly within the ... village or special taxing area; provided, however, that the county executive or the governing body of such ... village or special taxing area shall consent thereto to the other of such parties desiring

5. A plat of the proposed extension of Friendship Boulevard is attached hereto for reference purposes.

to construct such road or public way ... without regard to the laws or ordinances of such county ... village or special taxing area ....”

Sec. 49–57 is included in Article IV of Chapter 49 of the Montgomery County Code entitled “Construction of Roads by County.” The stated purpose of the Code provision is to allow for agreements between jurisdictions where a proposed road traverses separate jurisdictions. We construe the language to be permissive, *i.e.,* either may waive its ordinary standards for road construction in the event that both choose to participate in joint construction of the proposed road. Whether, under the statute, Friendship may decline to waive its standards for that portion of the road within its borders is not before us, but it may not, in our view, veto construction of the project. Clearly, Sec. 49–57 cannot be read to establish such an intent.

2.

Friendship alleges that the agency considered the sector plan as being inflexible, thereby requiring the extension of Friendship Boulevard. The sector plan is a comprehensive plan for the central business district of Friendship Heights. It presents planning objectives for future development and serves as a guide to implement planning goals for a particular area in the same manner as the overall Master Plan for the entire Bethesda Chevy Chase Planning Area. The Court of Appeals has recognized the flexible role of the sector plan; “It is to be a flexible guide rather than a straightjacket.” *Montgomery County v. Woodward and Lothrop,* 280 Md. 686, 376 A.2d 483 (1979). Nothing in the unanimous opinion filed by the Planning Board supports Friendship's allegation. To the contrary, the Board found that the site plan “is compatible with other uses and other site plans and with existing and proposed adjacent development.”

We perceive no error.

Those recommendations in the sector plan which pertain to improvement and extension of certain roads constitute an amendment to the existing master plan of highways. The agency acts to implement these recommendations unless a clear showing is made to demonstrate that the considerations and findings that were relevant at the time when the sector plan was adopted are no longer valid. The concerns of local access with respect to congestion, convenience, and safety raised in connection with this section of road at the time of the adoption of the sector plan were again addressed by the planning staff and submitted to the consideration of the Planning Board at the time of the hearing of this case. That report to the agency was contained in a memorandum from the planning staff to the agency, dated February 26, 1982. The report indicated that eight major alternative systems for circulation of traffic had been evaluated in connection with this site plan application, in terms of operational characteristics, financial considerations, and the effect upon the surrounding residential communities. Based on a review of these studies, the recommendation was that an internal ring road system be established which would require the extension of Friendship Boulevard as initially recommended in the Bethesda Chevy Chase Master Plan. One of the basic elements of this plan is the separation of local and through traffic by means of this ring road.

Friendship Heights is situated on Wisconsin Avenue, one of the most heavily used arterial roads leading into the District of Columbia. The ring road is recommended in the plan to alleviate an existing problem at the intersection of Wisconsin and Western Avenues by reducing the total volume of turning movements that occur in that area. Another key factor behind the ring road concept is the safety aspect of providing a second means of access for police, fire and rescue vehicles, or for emergency evacuation of the area in the event that one access point becomes blocked for some reason. Another relevant though less critical factor is the general desirability of diffusing the peak hour traffic impact

of ingress/egress loads away from a single intersection in order to avoid excess localized congestion.

In discussing the issue raised by Friendship that the ring road is not mandated by the sector plan, we must keep in mind that the issue legally under consideration is not the sector plan but site plan review under the statutory processing requirement of the R–H zoning already affirmed on the tract by the council's sectional map amendment of 1974. The applicant's site plan proposal merely permits the connection of Friendship Boulevard to the south and does not in any way require it. It is shown on the site plan as proposed by the applicants to keep open the option to implement this provision of the sector plan. The actual road connection would require a separate action. Whether another extension of Friendship Boulevard will ever get built is obviously the subject of a different forum than this site plan hearing. In summary, the staff recommendation to retain on the site plan the provision to connect Friendship Boulevard south through the Bergdoll Tract is in accordance with the adopted sector plan. Approval of the provision keeps open the option to implement the road connection but does not mandate it. It seems reasonably clear to us, therefore, that the agency did not retain in the site plan the provision to connect Friendship Boulevard, merely because it was part of the original sector plan in 1974. Rather, the information submitted indicated that the option to implement the road connection should be retained. We find no error in the agency's decision based upon the information submitted to it.

3.

Next, Friendship alleges that the road is not essential and that the data used by the agency in its decision to build the road is not current. Whether the road is essential is not the issue. That decision has already been made by the agency. Our review of that decision is limited to whether there was substantial evidence to support the agency's decision, or whether the evidence presented makes

that issue fairly debatable. *Howard County v. Dorsey,* 45 Md.App. 692, 416 A.2d 23 (1980); *Mayor and Aldermen of City of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 396 A.2d 1080 (1979); *Cicala v. Disability Review Board,* 288 Md. 254, 418 A.2d 205 (1980). Under either of the standards, the judicial review is restricted to whether a reasonable mind could have reached the factual conclusion which the agency reached. As we have noted in Argument 2. above, the agency did have before it evidence that the planning staff had re-evaluated the road options rather than rely exclusively on the 1974 sector plan. Additionally, in argument Friendship concedes that two available studies of a current nature dealing with traffic as it relates to the development of Friendship Boulevard were before the agency: one in connection with the Woodward & Lothrop Project which is the subject of a separate appeal, and one by Friendship for use in that case and offered and pertinent to these proceedings. Friendship alleges that their studies indicate that the road is unnecessary. We point out, however, that that is the ultimate decision entrusted to the agency and although Friendship may not agree with the result reached, the only issue before us is whether or not that decision is based on substantial evidence and we hold that it was so based.

4.

Friendship alleges that this case should be remanded to compel the agency to consider the expert studies proffered by them, citing *Heaps v. Cobb,* 185 Md. 372, 45 A.2d 73 (1946), which states:

> "To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action."

The difficulty with this argument is that the Planning Board ruled that all written material was to be submitted to the Board by the applicant and other interested persons by

February 22, 1982. The subsequent staff report dated February 26, 1982, was intended to be a response to staff questions regarding all of the written material and the record. It was not intended by the Planning Board that the record be re-opened after the staff report was submitted in order to allow further response to the report. We perceive no good reason why the Planning Board could not reasonably reject additional material submitted 24 days after the close of the record. As a matter of fundamental fairness to all participants in this or any proceeding, there must be a definite date after which written material may not be submitted; otherwise, a termination of the case would be unreasonably extended.

Summarizing, the agency made findings of fact and conclusion of law as required by Article 41 Sec. 244, *et seq.*, of the Administrative Procedure Act. The record establishes that the agency considered the specific criteria stated in Montgomery County Code, Ch. 59, Sec. 59–D–3 (1977), to wit:

> The site plan meets all of the requirements of the zone in which it is located;
>
> The locations of the buildings and structures, the open spaces, the landscaping, and the pedestrian and vehicular circulation systems are adequate, safe and efficient;
>
> Each structure and use is compatible with other uses and other site plans and with existing and proposed adjacent development.

Obviously, the litigation generated concerning the development of this area establishes contrary points of view. The agency's rejection of Friendship's arguments, however, does not compel a finding that those persuasive arguments were not given serious consideration. Where inconsistent inferences may be drawn from the testimony, it is for the agency to draw the inference. *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 390 A.2d 1119 (1978).

JUDGMENT REVERSED.

REMANDED FOR ENTRY OF AN ORDER AFFIRM-
ING THE DECISION OF THE MARYLAND NATIONAL
CAPITAL PARK AND PLANNING COMMISSION.
COSTS TO BE PAID BY FRIENDSHIP HEIGHTS, MARY-
LAND NATIONAL CAPITAL PARK AND PLANNING
COMMISSION AND COMMUNITY SOMERSET ASSOCI-
ATES IN EQUAL SHARES.